GRANITEVILLE MFG. CO. v. QUERY et al.

District Court, E. D. South Carolina.
Oct. 17, 1930.

P. F. Henderson, of Aiken, S. C. (Hendersons & Salley, of Aiken, S. C., on the brief), for plaintiff.

Cordie Page, Asst. Atty. Gen. (John M. Daniel, Atty. Gen., on the brief), and J. Fraser Lyon, of Columbia, S. C., for defendants.

Before PARKER and NORTHCOTT, Circuit Judges, and COCHRAN, District Judge.

ERNEST F. COCHRAN, District Judge.

The plaintiff brought suit against the defendants, as members of the South Carolina Tax Commission, to enjoin them from enforcing the collection of certain documentary stamp taxes. The matter comes up upon an application for an interlocutory injunction, made before three judges, under the provisions of section 266 of the Judicial Code, as amended (Title 28, section 380, U. S. Code [28 USCA § 380]).

The parties have entered into a written stipulation as to the facts of the case, which has been filed as a part of the record in the cause. The new Equity Rule 70½, recently promulgated by the Supreme Court, requires the courts of first instance, in deciding suits in equity, to find the facts and state the conclusions of law thereon, separately. Where all of the facts have been stipulated by the parties and made a part of the record, it would seem unnecessary to recite the facts in any opinion or decree made by the court, or make any special finding thereon. However, to avoid any uncertainty, we find all the facts as set forth in the stipulation, but do not deem it necessary to restate them in detail in this opinion, but will make only such brief statement as may be necessary for a proper understanding of the grounds of our decision.

The facts are substantially as follows:

The plaintiff is a South Carolina corporation, with its principal place of business at Graniteville, S. C., and is engaged in manufacturing in that state. An agent for the South Carolina tax commission recently made an examination at the offices of the plaintiff at Graniteville, and found there a number of notes, which plaintiff had executed to various banks outside of the state of South Carolina, and which had been paid. They were not stamped. The tax commission, pursuant to the laws of South Carolina, assessed a documentary stamp tax of $5,020.46 upon these notes, and notified the plaintiff that if it did not proceed to purchase documentary stamps in that amount and place the same upon the notes, they would proceed to issue execution and have the same levied upon plaintiff's property under the provisions of the South Carolina law. These notes were executed at various times from July 24, 1923, to March 12, 1930. The notes were all payable to banks, at their banking houses, respectively, outside of South Carolina; none of them being located or doing any business within that state. The custom and practice between the plaintiff and each of the banks was that in each instance, at the office of the bank, a line of credit was first established; that is, an agreement was made that the plaintiff's borrowing from the bank should never exceed a certain amount, each specific loan to be made thereafter being subject to acceptance by the bank. When a loan was desired, the bank having been notified that a loan would be desired at a certain date and an inquiry having been made of it as to the then existing discount rate, the note would be signed by the president or other executive officer of the plaintiff, and forwarded to the bank by mail. The note was subject to withdrawal and revocation by the plaintiff until it was actually

received and accepted by the bank and the proceeds actually placed to the credit of the plaintiff in the bank. Each note was executed on a blank form, which reads as follows:

"Graniteville Manufacturing Company

"Graniteville, South Carolina

"No. ———            ——— 192—.

"On ———, for value received, we promise to pay $——— thousand dollars, to the order of ——— at their banking house in ———.

"Graniteville Manufacturing Company."

The date and amount involved and the name of the bank were filled in and the note made payable to the bank at its banking house (which was outside of South Carolina). Payment of the note was made to the bank at its banking house by the plaintiff sending checks from its office at Graniteville upon other banks; and when the note was paid, it was marked paid, or canceled, and returned to the plaintiff at Graniteville, S. C., and there kept. The plaintiff did not place any documentary stamps upon any of its notes that were negotiated and placed with banks outside of South Carolina; acting, as it believed, within its legal rights and with absolutely good faith, and not with any purpose of evading any just tax. The plaintiff from time to time borrowed funds and placed loans with banks located within the state of South Carolina, and always fully stamped said notes with South Carolina documentary stamps, as required by law.

The foregoing facts apply to all of the notes; but with reference to the place where the notes were signed, they may be divided into two classes. Prior to December 1, 1924, the plaintiff's executive officers resided in Augusta, Ga., and all of its notes, up to that time, were signed by its executive officers in Augusta, Ga., and mailed from there to banks outside of South Carolina, and those notes were never in the state of South Carolina until after they were paid and returned to the plaintiff at its office at Graniteville, S. C. But after December 1, 1924, plaintiff's executive officers resided at Graniteville, S. C., and the notes executed subsequent to that time were signed by those officers at Graniteville, S. C., placed in the mail there for delivery to the bank outside of South Carolina, and, upon payment, were later returned to the plaintiff at Graniteville, S. C. The plaintiff owns a large cotton factory and real estate and much personalty in Aiken county, S. C., which would be subject to levy and sale under the laws of South Carolina.

The first question is whether or not the plaintiff has an adequate remedy at law. Unless there is an adequate remedy at law, an injunction is a proper remedy. But the remedy at law must be plain, full, and complete, and where the remedy at law is doubtful, the taxpayer is not compelled to speculate as to what the decision of the court of law will be, whether state or federal, but is entitled to an injunction. Davis v. Wakelee, 156 U. S. 680, 15 S. Ct. 555, 39 L. Ed. 578; Union Pacific R. Co. v. Weld County, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110; Dawson v. Kentucky Distilleries, 255 U. S. 296, 41 S. Ct. 272, 65 L. Ed. 638. See, also, Southern Ry. Co. v. Query (D. C.) 21 F. (2d) 333, 337, where a number of other Supreme Court decisions supporting the same propositions are cited.

The authority for the imposition of stamp taxes, during the time the plaintiff's notes were executed, is found in various acts of the Legislature of South Carolina, beginning in 1923; the last act being Act No. 574 of the Acts of the General Assembly of South Carolina of 1928 (pp. 1089–1142), approved March 10, 1928. All of them contain the following provisions:

"There shall be levied, collected and paid, for and in respect of the several bonds, debentures or certificates of stock and indebtedness, and other documents, instruments, matters and things mentioned and described in Schedule A of this Act, or for or in respect of the vellum, parchment, or paper upon which such instrument, matter or things, or any of them, are written or printed, by any person who makes, signs, issues, sells, removes, consigns or ships the same or for whose benefit or use the same are made, signed, issued, sold, removed, consigned, or shipped, the several taxes specified in such schedule. * * *

"Schedule A

" * * * Promissory notes, except bank notes issued for circulation * * * and for each renewal of same. * * * "

It was conceded by the counsel for the defendants that there is no remedy at law by which these taxes can be recovered after payment, unless it is contained in section 29 of the Act of 1928. That section is as follows:

"§ 29. Parts of Act Independent—Taxes to be Paid under Protest Sue for Recovery.—That if any clause, sentence, paragraph or part of this Act shall, for any reason, be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not af-

fect, impair or invalidate the remainder of this Act, but shall be confined in its operation to the clause, sentence, paragraph or part thereof directly involved in the controversy in which such judgment shall have been rendered. No caption of any Section or set of Sections shall in any way affect the interpretation of this Act or any part thereof: *Provided*, That the collection of the *license taxes* imposed under the provisions of this Act shall not be stayed or prevented by any injunction, writ or order issued by any Court or Judge thereon. *In all cases in which any license or tax is required to be paid hereunder by any person*, firm or corporation and the Tax Commission shall claim the payment of the taxes so assessed, or shall take any step or proceedings to collect the same, the person, firm or corporation *against whom such license taxes are charged*, or against whom such step or proceedings shall be taken, shall, if he conceives the same to be unjust or illegal for any reason, pay the *said taxes* notwithstanding, under protest, in such funds and monies as the South Carolina Tax Commission shall be authorized to *receive*, and upon such payment being made said South Carolina Tax Commission shall make proper note that the same was paid under protest and notify the State Treasurer that *such taxes* were paid under protest; that the person, firm or corporation *so paying said license taxes may at any time within thirty (30) days after making such payment*, but not afterwards, bring an action against the said South Carolina Tax Commission for the recovery thereof in any Court of competent jurisdiction and/or in proper cases in the Federal Courts and if it be determined in said action that such taxes were wrongfully and illegally collected for any reason owing to the merits, then the Court before which the case is tried shall certify of record that the same were wrongfully collected and ordered to be returned with interest thereon at the rate of four (4%) per centum per annum. Whereupon the Tax Commission shall issue its warrant upon the State Treasurer for refunding the taxes and interest so paid, which shall be paid in preference to other claims against the treasury."

From the portions of this section which we have italicized, it appears clear that the remedy provided is only for the recovery of license taxes. It is true that in one place the language used is "license or tax"; but when the whole section is read, it will be seen that only license taxes may be paid under protest and recovered, and the expression "license or

tax" is either an inadvertence or else the words "license or tax" were used as synonymous. In any event, those words must be construed in harmony with the remaining portions of the section, which speak only of "license taxes."

█ The tax in question, by the terms of the act, is not a license tax, but a documentary tax. It is unnecessary to enter into any complete analysis or discussion of the act; but a careful reading of it discloses that the first class of taxes levied are documentary taxes, expressly so declared by the terms of the act, levied directly on the documents themselves; and a number of other taxes which are levied are expressly denominated "license taxes" for the privilege of carrying on certain lines of business. The first part of the act deals solely with taxes on documents. The remaining part of the act deals with taxes on certain lines of business and sales and all of the taxes imposed thereon are expressly declared by the act itself to be license taxes. The act clearly contemplates two classes of taxes; one class which it denominates "documentary" taxes, and another class which it denominates "license" taxes. It is perfectly apparent that the provision in section 29 to permit the taxpayer to pay under protest and recover refers only to the license taxes mentioned in the act, and not to the documentary taxes. The plaintiff therefore has no adequate remedy at law to recover any of these stamp taxes on documents.

█ This brings us to the merits of the case. The plaintiff claims that the notes in question had no taxable situs in South Carolina, and any act of that state imposing a tax thereon would be in contravention of the Fourteenth Amendment to the Constitution of the United States. We shall discuss, first, but very briefly, those notes which were executed in Augusta, Ga., and mailed there to banks outside of South Carolina, and which were never in the state of South Carolina until after they were paid and returned to the plaintiff at Graniteville, S. C. As to those notes, we are clearly of opinion that they were beyond the taxing power of the state. The whole transaction from its inception, by the signing of the note in Georgia, to its consummation by payment in a state other than South Carolina, was entirely beyond the borders of South Carolina and consequently beyond the power of that state to tax. It is perhaps superfluous to cite decisions to sustain the proposition that a state cannot tax property which has no legal situs within the

state. The late cases upon this subject all recognize and affirm this proposition. See Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749; Safe Deposit & Trust Co. of Baltimore v. Virginia, 280 U. S. 83, 50 S. Ct. 59, 74 L. Ed. 180, 67 A. L. R. 386; Farmers' Loan & Trust Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. 371; Baldwin v. Missouri, 281 U. S. 587, 50 S. Ct. 436, 74 L. Ed. 1056.

As to the stamp taxes demanded on those notes which were executed in Augusta, Ga., and mailed there to banks outside of South Carolina, the interlocutory injunction must be granted.

But as to those notes which were signed and mailed at Graniteville, S. C., different considerations must prevail; and it is necessary to examine and discuss more fully the plaintiff's contention in that respect. The theory of the plaintiff is that under the four cases recently decided by the Supreme Court, which are cited above, the doctrine announced in Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439, and kindred cases, has been swept away, and that the established doctrine now is that intangibles can have but one taxable situs, and that that situs can be only in the state of the domicile of its owner, even though the instrument itself may be physically in some other state. The plaintiff contends that the maxim of mobilia sequuntur personam must be applied to ascertain the taxable situs in all cases of intangibles; and that when the taxable situs is ascertained by the application of that maxim, namely, the residence of the owner, the intangibles may not be taxed anywhere else by any form of taxation. We do not deem it necessary to attempt to review the various cases decided by the Supreme Court prior to the four cases mentioned. That has been done by the Supreme Court in those cases. We are not persuaded that the Supreme Court has established the doctrine as broadly as claimed by the plaintiff. A careful examination of the four cases relied upon by the plaintiff convinces us that they are not decisive of the question in the present case; nor do we think either the reasoning or the conclusion reached in those cases demands a decision in the present case in favor of the plaintiff.

The first of these cases in point of time is the Connecticut case, Blodgett v. Silberman, supra. In that case it was held that the state of Connecticut might levy an inheritance tax, it being the state of the domicile of the decedent, upon the value of an interest in a partnership existing solely in New York State, and upon the value of bonds and certificates of the United States, which were physically kept on deposit in New York.

In the Virginia case, Safe Deposit & Trust Co. v. Virginia, supra, one Kellam, then domiciled and residing in Virginia, transferred and delivered to the Safety Deposit & Trust Company, for the benefit of his minor sons, stocks and bonds, with power to change the investments. He absolutely parted with title to the property. His sons were domiciled in Virginia, and the state of Virginia, after Kellam's death, levied a property tax on the bonds. The stocks and bonds were kept by the Safety Deposit & Trust Company, in Maryland. The Supreme Court held that the absolute title to the bonds was in the Safety Deposit & Trust Company, which had its domicile in Maryland; that the stocks and bonds had acquired a situs separate from that of the beneficiary owners, applied the maxim of mobilia sequuntur personam, and held that Virginia could not levy the tax.

In the Minnesota case, one Taylor, domiciled and residing in New York, died there. He owned and kept within the state of New York negotiable bonds and certificates of indebtedness issued by the state of Minnesota and cities of Minneapolis and St. Paul. Minnesota claimed an inheritance tax upon the theory of Blackstone v. Miller; that the debtor, maker of the bonds and certificates, was within her jurisdiction; that they were debts of Minnesota and her corporations, subject to her control; and that her laws protected them and gave them validity and provided means for enforcing payment. The Supreme Court, however, definitely overruled Blackstone v. Miller, and held that the facts were not sufficient to create a taxable situs in Minnesota.

In the Missouri case, Baldwin v. Missouri, supra, Mrs. Baldwin resided in Illinois, and had never been in Missouri. By her will, she left all her property to her son, a resident of the same place, and appointed him sole executor. The will was duly probated at her residence, and under the statute of Illinois, an inheritance tax was there laid upon the value of all her intangible personalty, wherever situated. Ancillary letters of administration were issued in Missouri, and a report to the court in that state showed that at the time of her death, Mrs. Baldwin owned credits for cash deposits with banks located in Missouri, certain United States coupon bonds, and sundry promissory notes which were then physically within Missouri. Most of these notes were executed by citizens of Missouri, and

the larger part were secured by liens upon lands lying therein. Missouri sought to impose an inheritance tax on these bank deposits, bonds, and notes. The court held that the bank deposits, bonds, and notes were mere choses in action, and even though they were physically within the state of Missouri, they had their situs at the domicile of the creditor, and were not within Missouri for taxation purposes; that they passed from the dead to the living in Illinois, where they were actually taxed; and that the transfer was not in Missouri and not subject to her power.

■ The broad claim of the plaintiff is that under these decisions, the situs of choses in action is the domicile of the owner, and that they can have no other legal situs whatsoever for taxable purposes, under any circumstances. We think it is clear that those decisions do not go that far. They do not hold that the maxim mobilia sequuntur personam (which after all is a mere fiction of law) must be universally applied in all situations. In the present case, we have a corporation chartered by the laws of South Carolina, with an established office in that state, doing business there, signing and issuing in that state notes in the conduct of its business, and mailing them in that state; and in our opinion, to apply the maxim in such a case, and hold that such transactions were wholly beyond the borders of the state and therefore beyond her taxing power, would be to make the fiction of the maxim override the actual facts of the case. The tax in this case is not a property tax upon intangibles, the title to which is held elsewhere, as in the Virginia case. Nor is it a tax upon a transfer of intangibles when the transfer occurred wholly without the state, as in the Minnesota and Missouri cases. Nor is it a tax sought to be imposed because of the physical presence of intangibles owned in another state, as was likewise the situation in the Missouri case. But the tax in the present case is a tax upon the creation within the state of South Carolina of evidence of a debt. These notes were created, if not wholly, certainly partly, within the state of South Carolina. The object taxed, therefore, namely, the creation of the evidence, was within the state, and subject to the power of the state. The tax is laid upon the documents themselves, and required to be paid by the person who makes, signs, or issues them. The documents were within the state, made, signed, and issued there. None of these facts appears in any of the cases relied upon by the plaintiff. They give a legal, taxable situs in South Carolina.

■ The plaintiff further argues, however, that inasmuch as it had the right of revocation until the note was received and accepted by the bank, and inasmuch as the bank had the right to decline to accept the note, the contract was not completed until after the note had passed beyond the power of South Carolina. He cites numerous cases upon the question that the law of the place where the contract is finally accepted or delivered, governs. But we do not think the question presented here is controlled by decisions relative to the law governing the contract. The question before us is whether the acts in question were so wholly beyond the state of South Carolina as to be beyond her power to tax. The statute of South Carolina is broad enough to cover the case of notes actually signed and placed in the mail for delivery, even though there is a right of revocation by the plaintiff, or rejection by the bank. In view of the broad language of the statute, in the absence of a decision by the state court, we are not disposed to construe the statute as not applying to such a case. The real question before us is whether, when the statute has been applied to such a case, as has been done here by the tax commission, it violates the Fourteenth Amendment. We do not think so. It was competent for South Carolina to lay a tax upon these acts occurring within her borders, even though the contract might not be fully consummated by the acceptance of the bank, or might be defeated by the revocation of the plaintiff.

■ The plaintiff contends also that the laying of the tax in question is a burden upon interstate commerce. But under the decisions of the Supreme Court it is plain that the notes in question did not constitute interstate commerce. They are mere personal contracts. The making of such a contract is a mere incident of commercial intercourse, and sending the notes by mail or otherwise from one state to another does not constitute interstate commerce. See New York Life Ins. Co. v. Deer Lodge County, 231 U. S. 495, 34 S. Ct. 167, 58 L. Ed. 332, where the subject is fully discussed and the decisions reviewed.

For these reasons, we think that so far as concerns those notes which were signed and mailed in South Carolina, the interlocutory injunction must be refused.

An appropriate order in accordance with the views herein expressed will be duly entered.

PARKER and NORTHCOTT, Circuit Judges, concur in the foregoing opinion.