## GRANITEVILLE MANUFACTURING CO. *v.* QUERY ET AL.

No. 596. Argued April 27, 1931.—Decided May 18, 1931.

*Mr. P. F. Henderson* for appellant.

*Messrs. John M. Daniel,* Attorney General of South Carolina, and *J. Fraser Lyon* were on the brief for appellees.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The Graniteville Manufacturing Company, a corporation of South Carolina, brought this suit in the District Court of the United States to restrain the collection of certain stamp taxes imposed upon its promissory notes under Act 574, p. 1089, of the Acts of 1928 of that State.[1]

---

[1] The statute is as follows: "Section 1. That on and after the passage of this Act, there shall be levied, collected and paid, for and in respect of the several bonds, debentures or certificates of stock and indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this Act, or for or in respect of the vellum, parchment, or paper upon which such instrument, matters of things, or any of them, are written or printed, by any person who makes, signs, issues, sells, removes, consigns or ships the same or for whose benefit or use the same are made, signed, issued, sold, removed, consigned, or shipped, the several taxes specified in such schedule.

"SCHEDULE A.

"4. Promissory notes, except bank notes issued for circulation and executory contracts for the payment of money which are executed or carried out in an instrument of writing to which documentary

A motion for an interlocutory injunction was heard by three judges, as required by § 266 of the Judicial Code (U. S. C., Title 28, § 380). Holding that the plaintiff had no adequate remedy at law, the court granted an injunction with respect to notes made outside the State but denied relief as to notes which were signed within the State. 44 F. (2d) 64.

There is no controversy as to the facts, which were stipulated and found by the court substantially as follows:

" These notes were executed at various times from July 24, 1923, to March 12, 1930. The notes were all payable to banks, at their banking houses, respectively, outside of South Carolina, none of them being located or doing any business within that State. The custom and practice between the plaintiff and each of the banks was that in each instance, at the office of the bank, a line of credit was first established; that is, an agreement was made that the plaintiff's borrowing from the bank should never exceed a certain amount, each specific loan to be made thereafter being subject to acceptance by the bank. When a loan was desired, the bank having been notified that a loan would be desired at a certain date and an inquiry having been made of it as to the then existing discount rate, the note would be signed by the president or other executive officer of the plaintiff, and forwarded to the bank by mail. The note was subject to withdrawal and revocation by the plaintiff until it was actually received and accepted by the bank and the proceeds actually placed to the credit of the plaintiff in the bank. . . . Payment of the note

---

stamps are affixed; nonnegotiable notes; written obligations to pay money, except as may herein otherwise be provided for; assignment of salaries, wages or other compensation; and for each renewal of same, for a sum not exceeding One Hundred ($100.00) Dollars, four (4) cents; and for each additional One Hundred ($100.00) Dollars, or fractional part thereof, four (4) cents."

was made to the bank at its banking house by the plaintiff sending checks from its office at Graniteville upon other banks; and when the note was paid, it was marked paid, or canceled, and returned to the plaintiff at Graniteville, S. C., and there kept.

" The foregoing facts apply to all of the notes; but with reference to the place where the notes were signed, they may be divided into two classes. Prior to December 1, 1924, the plaintiff's executive officers resided in Augusta, Ga., and all of its notes, up to that time, were signed by its executive officers in Augusta, Ga., and mailed from there to banks outside of South Carolina, and those notes were never in the State of South Carolina until after they were paid and returned to the plaintiff at its office at Graniteville, S. C. But after December 1, 1924, plaintiff's executive officers resided at Graniteville, S. C., and the notes executed subsequent to that time were signed by those officers at Graniteville, S. C., placed in the mail there for delivery to the bank outside of South Carolina, and upon payment, were later returned to the plaintiff at Graniteville, S. C."

It is only as to the latter class of notes which were signed in South Carolina that the District Court upheld the tax. The tax as thus sustained is an excise tax, of a familiar sort, levied with respect to the creation of instruments within the State. So laid, the tax was not imposed upon property, or upon the transfer of property, situated beyond the jurisdiction of the State as was found to be the case in *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *Frick* v. *Pennsylvania,* 268 U. S. 473; *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204; *Baldwin* v. *Missouri,* 281 U. S. 586; *Beidler* v. *South Carolina Tax Commission,* 282 U. S. 1. It is simply a tax levied in relation to an act done within the State in making an instrument. *New York ex rel. Hatch* v. *Reardon,* 204

U. S. 152; *Brodnax* v. *Missouri,* 219 U. S. 285. See, also, *Nicol* v. *Ames,* 173 U. S. 509, 519. We see no reason to doubt the validity of the tax as thus enforced.

*Order affirmed.*