16397

SOUTH CAROLINA ELECTRIC & GAS CO. v. PINCKNEY *ET AL.*

(60 S. E. (2d) 851)

*Messrs. John M. Daniel, Attorney General,* and *Claude K. Wingate, Assistant Attorney General,* of Columbia, *for Appellants,*

*Mr. Arthur M. Williams, Jr.,* of Columbia, *for Respondent,*

August 14, 1950.

Oxner, Justice.

This action is brought under the provisions of the Uniform Declaratory Judgments Act, 45 St. at L. 2014. We are asked to determine whether or not certain bonds or debentures issued by the South Carolina Electric & Gas Company are subject to the South Carolina Documentary Tax.

Under the terms of Section 2525 of the 1942 Code, a tax is imposed upon various documents and instruments and is paid by purchasing and affixing thereto stamps in the amount of the tax. Corporate bonds, debentures or certificates of indebtedness with interest coupons or in registered form are taxed at the rate of 10¢ on each $100.00 of face value or fraction thereof.

The material facts alleged in the complaint are substantially as follows:

"In 1943, plaintiff, a South Carolina corporation and an electrical utility, entered into a corporate mortgage with the Bank of The Manhattan Company and another as trustees in the State of New York, and, subsequently, into indentures supplemental thereto. Pursuant to the terms of these in-

dentures, plaintiff issued and sold bonds to various pur-
chasers, the proceeds of which were deposited with the trus-
tees of the mortgage to be paid over to plaintiff as certain
conditions delineated in the mortgage were fulfilled. These
bonds were printed, signed by an officer of plaintiff, and
had the corporate seal impressed thereon by plaintiff's secre-
tary outside of the territorial limits of the State of South
Carolina, namely, in the State of New York. Similarly, the
bonds are payable, both as to interest and principal, in New
York. The manual delivery of the bonds to the purchasers
also took place in the State of New York."

Plaintiff sought and was granted permission to issue and
sell said bonds by the Public Service Commission in accord-
ance with the terms of Section 8555-2(13) of the 1942
Code.

The South Carolina Tax Commission demurred to the
complaint upon the ground that the fact that the issue and
sale of said bonds had to be approved by the South Carolina
Public Service Commission rendered them subject to the
documentary stamp tax. The demurrer was overruled by the
Court below on the authority of *Graniteville Manufacturing
Co. v. Query et al.,* D. C., 44 F. (2d) 64, 69.

The facts in the *Graniteville case* were substantially as
follows: Graniteville Manufacturing Company, hereinafter
referred to as Graniteville, a South Carolina corporation
with its principal place of business at Graniteville, S. C.,
established a line of credit with certain banks located out-
side South Carolina. When a loan was desired, a note would
be signed by the president or other executive officer of
Graniteville and forwarded to the bank by mail. Such note
was subject to withdrawal and revocation by the maker
until it was actually accepted by the bank and the proceeds
placed to the credit of Graniteville. Payment of the note
was made by checks upon other banks mailed from the
office at Graniteville. The bank holding the note thereupon
cancelled same and returned it to the maker at Graniteville,

S. C. In accordance with this practice, notes were executed at various times from July 24, 1923 to March 12, 1930. Prior to December 1, 1924, Graniteville's executive officers resided at Augusta, Georgia, and all notes up to that time were signed by these officers at Augusta, Georgia, and mailed from there to the banks outside South Carolina. These notes were never in South Carolina until after they were paid and returned to the maker at its office at Graniteville, S. C. But after December 1, 1924, the executive officers resided at Graniteville, S. C., and the notes executed subsequent to that time were signed by them at the latter place and mailed to the bank from which the loan was obtained.

The Court held that the notes executed at Augusta, Ga. were not subject to the tax because the whole transaction from its inception was entirely beyond the borders of South Carolina and, consequently, beyond the power of this State to tax. The tax was upheld as to the notes executed at Graniteville, S. C. In doing so, the Court said: "The tax * * * is a tax upon the creation within the state of South Carolina of evidence of a debt. These notes were created, if not wholly, certainly partly, within the state of South Carolina. The object taxed, therefore, namely, the creation of the evidence, was within the state, and subject to the power of the state. The tax is laid upon the documents themselves, and required to be paid by the person who makes, signs, or issues them. The documents were within the state, made, signed, and issued there. * * * It was competent for South Carolina to lay a tax upon these acts occurring within her borders, even though the contract might not be fully consummated by the acceptance of the bank, or might be defeated by the revocation of the plaintiff."

Graniteville appealed to the United States Supreme Court. The judgment of the lower Court was affirmed in a brief opinion by Mr. Chief Justice Hughes. *Graniteville Mfg. Co. v. Query et al.,* 283 U. S. 376, 51 S. Ct. 515, 516,

75 L. Ed. 1126. He characterized the tax in question as "an excise tax, of a familiar sort, levied with respect to the creation of instruments within the state" and said "it is simply a tax levied in relation to an act done within the state in making an instrument."

We have never had occasion to construe the statute imposing the tax involved in this controversy. The construction adopted in the *Graniteville case* appears to us as sound. Under the principles there announced, is respondent liable for payment of the tax on the bonds issued under the circumstances heretofore stated?

It may be fairly inferred that the mortgage securing these bonds was recorded in South Carolina. While many states levy an excise tax upon the privilege of admitting mortgages to record under their registration laws (see *Community Public Service Co. v. James et al.,* Tex. Civ. App., 167 S. W. (2d) 588, where many of these statutes are reviewed), the statute in question does not impose a mortgage registration tax.

We are not advised from the statement of facts in what state corporate action was taken authorizing the issuance of these bonds or where the executive offices of respondent are located. We, therefore, need not determine what effect these circumstances would have on our decisions. The only facts before us are that the bonds and mortgage securing same were signed, sealed and delivered in the State of New York; the trustees of the mortgage are non-residents; and the obligations are payable in New York State. The entire transaction, so far as the record shows, occurred in New York State and no act relating to the creation of these obligations took place in South Carolina unless it can be said that the certificate of authority by the Public Service Commission to issue and sell same constituted an integral part of the creation of the obligations sought to be taxed. It is solely upon the action of the Public Service Commission that appellant relies as sustaining liability on the part of respondent for stamp taxes on these bonds.

412

Section 8555-2(13) of the 1942 Code prohibits the issuance of any long term securities by electrical utilities, except municipalities, without the approval of the Public Service Commission. Any electrical utility desiring to issue such securities is required to file an application with the Public Service Commission stating the amount and character of securities proposed to be issued, the consideration of same, the purpose for which the proceeds are to be used, the finanical condition of the applicant and certain other facts. If the application is approved, a certificate of authority to such utility is then issued by the Public Service Commission.

The foregoing statute is obviously a regulatory measure designed for the protection of the public interest. The Commission cannot compel a utility to issue securities. The obligations can only be created by proper corporate action of the utility involved. The statute is only a restriction on the power of a utility to issue securities and compliance with its terms cannot be said to be an act done in the creation of the debt evidenced by the securities issued.

Our conclusion is strengthened by the well settled rule that tax statutes cannot be extended by implication beyond the clear import of the language used and any substantial doubt must be resolved against the government and in favor of the taxpayer. *Fuller et al. v. S. C. Tax Commission,* 128 S. C. 14, 121 S. E. 478; *Hadden et al. v. S. C. Tax Commission,* 183 S. C. 38, 190 S. E. 249; *Phillips v. S. C. Tax Commision,* 195 S. C. 472, 12 S. E. (2d) 13.

The order appealed from is affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.