THORNAL, Justice.
Appellant, Peninsular Telephone’ Company/was relator below and appeals from a final judgment dismissing an alternative writ of mandamus in a proceeding by which appellant sought refund of certain documentary stamp taxes theretofore collected by appellee, Gay, as then Comptroller, under Section 201.07, Florida Statutes, F.S.A.
The question presented by appeal is whether on the record in this case the appellant-relator was liable for the payment of the documentary stamp taxes.
Peninsular Telephone Company is a Florida corporation engaged in the business of supplying telephone and wire services within the State. In October, 1950, the officers of the company executed and de *133 livered in New York City an issue of $8j-500,000 of bonds secured by a mortgage in the form of a trust indenture encumbering the property of the corporation in Florida. The trust indenture likewise was executed in New York. A meeting of the Bdard of Directors authorizing the issue of the bonds was held in New York. The bonds were sold and delivered in New York to "banks in that City and State. The proceeds derived from the sale of the bonds were paid to officers of the corporation in New York. So' far as this record reveals no corporate action whatsoever incident to the ‘ authorization, execution, sale and delivery of the bond issue took place within the State of Florida.
The corporation purchased Florida documentary stamps in the amount of $8,500, paid for them under protest and after affixing the stamps to the bonds in New York City immediately demanded a refund of the amount of the stamp tax. The appellee Gay, as Comptroller, on March 19, 1951, refused to make the refund. Whereupon Peninsular Telephone Company petitioned for an alternative writ of mandamus to require the Comptroller to refund the taxes paid. The alternative writ was issued. The essential facts summarized above are not in dispute.
The trial judge heard the matter- on relator’s motion for a peremptory writ upon the record, which included the alternative writ and the return of the respondent. In the trial court and in this court relator contends that Sections 201.01 and 201.07, Florida Statutes, F.S.A., impose a documentary stamp tax only upon documents issued within the state of Florida, that the bonds in question were issued in the State of New York and had never been within the State of Florida, and that therefore they were not subj ect to the tax.
The respondent Comptroller contended below and contends in this court that insofar as corporations are concerned, the tax in question is an imposition against the ' privilege of a Florida corporation to borrow money and that this is a proper tax btírden-'to impose upon a corporation which enjoys its privilege of doing business under the laws of Florida. It' is also contended by' the appellee that under Section 612.35, Florida Statutes, F.S.A., which was in force when this transaction was taking place, a corporation was precluded from mortgaging' • all of its corporate property and assets without the approving vote of a majority of the stockholders of record, and that there is no showing in the petition for the alternative writ that the authorizing stockholders’ meeting' was not held in the State of Florida.
The trial judge agreed with the position of the State Comptroller and entered a final judgment quashing the alternative writ and denying the "relief sought." It is this judgment that we are here called upon to review.
Section 201.01, Florida Statutes, F.S.A. (Section 1, Chapter 15787, Laws of Florida, Extraordinary Session, 1931), reads as follows :
“There shall be levied, collected and paid the taxes specified in this chapter, for and in respect to the several documents, bonds, debentures or certificates of stock and indebtedness, and other documents, instruments, matters, writings, and things described in the following sections, or for or in respect of the vellum, parchment, or paper upon which such document, instrument, matter, writing, or thing, or any of them, are written or printed by any person, who makes, signs, executes,' issues, sells, removes, consigns, assigns, or ships the same, or for whose benefit or use the same are made, signed, executed, issued, sold, removed, consigned, assigned, or shipped in the State of Florida.” (Emphasis added.)
Section 201.07, Florida Statutes (Section 1, Chapter 15787, Laws of Florida^ Extraordinary Session, 1931), reads as follows:
“On all bonds, debentures, or certificates of indebtedness issued in the *134 State of Florida by any person, and all instruments and documents, however termed, issued by any corporation with interest coupons or in registered form, on each hundred dollars of the face value or fraction thereof, the tax shall be ten cents; provided, however, that only that part, of the value of the bonds, debentures, or certificates of indebtedness issued by any such person, the property of which is located within the state shall bear to the whole value, of the property described in said instrument or obligation shall be taxed hereunder.”
Appellee contends that under Section 201.07, supra, the issuance of bonds by “any person” must take place within the State of Florida to be taxable but that the issuance of such bonds by “any corporation” does not necessarily have to take place within the limits of the State to justify the imposition of the tax for the reason, so he contends, that a corporation enjoys its very existence by virtue of the laws of the State of its domicile and that as to such a corporation, the tax involved is a tax on the privilege of borrowing money in order that the corporation may continue to do business within the limits of the State of its domicile.
We cannot read into the applicable Statute that the Florida Documentary Stamp Tax is in any sense a tax on the “privilege of borrowing money.” Certainly no such legislative intent is evidenced by the language of the Act. We are of the view that it is more nearly of the nature of a transaction tax that is imposed upon the particularly described transactions when they occur within the limits of this state. Such transactions are evidenced by the execution of certain types of written instruments and the stamps are affixed to the instruments as evidence of payment of the tax. While it is tru'e that the “transaction” is the borrowing of money; nevertheless it is incomplete until documents evidencing the debt are executed and delivered, and the money exchanged therefor. It. is this execution and exchange of documents for money that creates the documentary tax liability. Thus it is that the tax is on the .transaction itself and not upon the mere privilege of engaging in the transaction. A nonresident corporation completing such a transaction in Florida would pay the documentary stamp tax even though it enjoyed its existence as a corporate entity under the laws of another state. The very name by which our own statutes describe the tax bespeaks the nature of the impost— it is a. tax on documents evidenced by a stamp to be placed thereon at the effective delivery thereof.
Although this type of tax is now rather commonplace, there are strangely few decisions which may be used as a guide to our conclusion. We are of the view, however, that the opinion of a three-Judge Federal Court in Graniteville Mfg. Co. v. Query, D.C., 44 F.2d 64, and the opinion of the Supreme Court of the United States in Graniteville Mfg. Co. v. Query, 283 U.S. 376, 51 S.Ct. 515, 516, 75 L.Ed. 1126, are strongly analogous and sufficiently so that we adopt them as a guide to our’decision in the case at bar. The nature of the type of tax involved was adequately described by Mr. Chief Justice Hughes in the United States Supreme Court decision in the Graniteville Mfg. case when he stated:
“The tax as thus sustained is an excise tax, of a familiar sort, levied with respect to the creation of instruments within the state. * * * It is simply a tax levied in relation to an act done within the state in making an instrument.”
In Graniteville Mfg. Co. v. Query, D.C., 44 F.2d 64, 67, as the case was presented to the District Court, the facts showed that there were two types of documents. The Graniteville company was a South Carolina corporation that maintained an executive office in Augusta, Georgia. While its officers were in Augusta, the corporation executed certain notes and mailed the notes to banks outside of South Carolina. The *135 notes themselves were never actually within the State of South Carolina. Subsequently the corporation’s officers moved to South Carolina where they executed another series of notes and mailed them in South Carolina for delivery to a bank outside of that state. The District Court held that the notes executed in Georgia which never occupied any situs whatsoever in South Carolina were not subject to the South Carolina documentary stamp tax. On the other hand, the notes executed within the State of South Carolina were subject to the tax. As to the notes executed and delivered outside of the taxing state, we quote with approval the following from the opinion of the District Court:
“As to those notes, we are clearly of opinion that they were beyond the taxing power of the state. The whole transaction from its inception, by the signing of the nóte in Georgia, to its consummation by payment in a ‘state other than South Carolina, was entirely beyond the borders of South Carolina and consequently beyond the power of that state to tax. It is perhaps superfluous to cite decisions to sustain the proposition that a state cannot tax property which has no legal situs within the state.” '
The trial judge in the case before us stated in his final order that he relied on the opinions of this court in Gay v. Inter-County Tel. & Tel. Co., Fla. 1952, 60 So.2d 22; and State ex rel. United States Sugar Corporation v. Gay, Fla.1950, 46 So.2d 165. We do not consider these decisions controlling. In thé Inter-County Tel. & Tel. Co. case we held that when stock of a Florida corporation was transferred on the books of that corporation, it was necessary to pay the tax and affix the stamps to the stock books of the corporation at the time of noting the transfer on the corporate records. The transfer of the stock was completed when the record of the transfer Was made in Florida on the corporate stock book. Clearly, the act of 'completing the transfer took place within the State of Florida.
In the United States Silgar Corporation case the tax involved was hot the Florida Documentary Stamp Tax but rather a Class C intangible Personal Property Tax levied under Chapter 199, Florida Statutes, F.S: A., and we there held that when the nonresident owner of Florida corporate securities took advantage of the Florida recording statutes in recording the trust indenture, he thereupon became liable for the payment of the intangible tax which is made a condition precedent to the recording of a mortgage in this state. ■
We reaffirm the opinions in the two cases last cited. We merely hold here that the rules of those cases were not applicable to the situation now before us. In the case at bar it was conceded at the oral arguments that the relator corporation had paid the Florida Intangible Tax when the trust indenture was recorded. No effort to re-' cover this tax is made.
The appellee 'further ‘contends that Section 612.35, Florida 'Statutes, F.S.A;, requires authorizing action of the stockholders of a corporation as a condition precedent to mortgaging all of the corporate property. We find it unnecessary to enter into any prolonged discussion • of the merits of this contention. Reference to Section 612.35, Florida Statutes, 1951, F. S.A., will reveal that the directors of a corporation could act to “sell, lease or exchange all of its property” provided such action is authorized by the affirmative vote of a majority of the stockholders. • Appel-lee contends that the expression “sell, lease or exchange” includes the mortgaging of all the corporate property. Cases from other states are cited to support this construction. It is not necessary to attempt to construe section 612.35, Florida Statutes, F.S.A., as it relates to the matter before us for the reason that analysis reveals that this section wás originally enacted as Section 35, *136 Chapter 10,096, Laws of Florida, 1925. By reference to section 3 of Chapter 10,096, Laws of Florida, 1925, it will be noted that the cited statute was applicable to all corporations except certain types of, corporations and that one of the excepted types was “telephone companies.” Consequent-, ly, the appellant being a telephone company would not be governed by the.provisions of Section 612.35, Florida Statutes, F.S.A., even if the language of that section would otherwise permit its applicability to the matter before us, and we do not undertake to decide that it would.
We point out in passing that, at the time of the transaction in the matter before us, telephone companies were governed by the provisions of Chapter 611, Florida Statutes, F.S.A. Our statutes governing corporations have now been revised and combined into Chapter 608, Florida Statutes, F.S.A., by virtue of the enactment of Chapter 28170, Laws of Florida, 1953. See Section 608.19', Florida Statutes, 1955, F.S.A., with reference to necessity of stockholder approval of corporate mortgages.
We are therefore of the view that the-bonds in the instant case were issued in the State of New York. Since the record before us fails, to reveal that any single solitary aspect of the transaction essential to the authorization, execution, sale and delivery of the bonds took place within the limits of the State of Florida, the issuance of.these bonds was not subject to the imposition of the Florida Documentary Stamp Tax. The tax having been paid under circumstances where no tax was due and the appellant • having proceeded to . recover it in timely fashion in accordance with the provisions of Section 215.26, Florida Statutes, F.S.A., we find on the basis of this record that appellant was entitled to a refund of the amount of the tax paid.
For the reasons stated -the judgment quashing the alternative writ- and dismissing the cause is hereby reversed and the cause, remanded to the trial court for further proceedings consistent with this opinion.
HOBSON, Acting C. J., and ROBERTS and O’CONNELL, JJ., concur.
MILLEDGE, Associate Justice, dissents.
DREW, C. J., and THOMAS, J„ not participating.