19543

INVESTORS PREMIUM CORPORATION, Respondent, v. The SOUTH CAROLINA TAX COMMISSION et al., Appellants

(193 S. E. (2d) 642)

14

Messrs. *Daniel R. McLeod, Atty. Gen., Joe L. Allen, Jr.,* and *G. Lewis Argoe, Jr., Asst. Attys. Gen.,* of Columbia, *for Appellants,*

*Harry M. Lightsey, Jr., Esq.,* of Columbia, *for Respondent,*

January 3, 1973.

LITTLEJOHN, Justice:

Investors Premium Corporation, the plaintiff herein, brought this action against The South Carolina Tax Commission, defendant, under South Carolina Code of Laws § 65-2662 (1962) to recover documentary stamp taxes paid under protest in the amount of $12,107.62. This amount represents documentary stamp taxes due on notes, executed by various borrowers in favor of plaintiff to procure funds to pay insurance premiums, and due on powers of attorney, executed incident to the notes to assist in collecting in case of default.

The trial judge in his order found that the several loans were evidenced by promissory notes which contained, among the provisions, a power of attorney. He further found that the notes were subject to the promissory note documentary stamp tax imposed by § 65-688 of the Code, but that the powers of attorney were not subject to the power of attorney documentary stamp tax imposed by § 65-690 of the Code. The trial judge concluded that it was not the intent of the legislature to impose "a tax on documents which contain limited powers of attorney which are incidental to the primary purpose of the document, particularly where such document is already subject to a documentary stamp tax in another form."

On appeal, the plaintiff admits liability for the stamp taxes due on the many notes involved, but denies that $11,521.00 in stamp taxes are due on the corresponding number of accompanying powers of attorney.

The issues involved in this appeal are whether, under § 65-690 of the Code, the powers of attorney require documentary stamp tax, and, if so, is the borrower or the lender liable for the payment under § 65-681 of the Code.

The facts essential and material to an understanding of the legal issues here involved are not in dispute and may be stated as follows:

(1) The plaintiff is a premium service company set up under the provisions of § 37-1301, *et seq.*, Code of Laws of South Carolina, 1962, as amended.

(2) The plaintiff lends to individuals funds to pay insurance premiums, which are repaid by the borrower on an installment basis.

(3) Pursuant to the transaction, the borrower signs an insurance premium service agreement, which sets forth all the conditions of the loan. It is essentially a promissory note.

(4) In addition, section 9 of the agreement reads:

"POWER OF ATTORNEY

9. Hereby irrevocably constitute and appoint Investors Premium Corp., P. O. Box 5905, Columbia, South Carolina, as my/our Attorney in Fact (coupled with an interest), with full power of substitution to require and direct the cancellation of said insurance policies listed, or any renewal or rewrite thereof, receive all sums assigned to Investors Premium Corp. to execute and deliver on behalf of the undersigned all documents, forms, and notices relating to the policies listed in furtherance of this agreement, and the said companies are hereby directed to recognize any such requirement or direction, be the same made by my said Attorney in Fact or any substitute for it, be such substitute expressly named or created by operation of law. Any sum received from an insurance company shall be credited to the balance due hereunder, and if there is any excess over the balance due it shall be paid to the insured. The insured shall remain liable for any deficiency."

(5) Section 65-681 of the 1962 Code, as amended, reads as follows:

"Imposition.—There shall be levied, collected and paid for and in respect of the several bonds, debentures or certificates of stock and indebtedness and other documents, instruments, matters and things mentioned and described in §§ 65-682 to 65-684 and §§ 65-688 to 65-690 or for or in respect of the vellum, parchment of paper upon which such instrument, matter or thing, or any of them, are written or printed by any person who makes, signs, issues, sells,

removes, consigns or ships them or for whose benefit or use they are made, signed, issued, sold, removed, consigned or shipped the several taxes specified in said sections."

(6) Section 65-690 of the 1962 Code as amended, reads as follows:

"Powers of attorney.—A power of attorney granting authority to do or perform some act for on in behalf of the grantor, which authority is not otherwise vested in the grantee, shall be taxed fifty cents."

The first question on this appeal is whether the power of attorney set forth in section 9 of the agreement requires the payment of a power of attorney documentary stamp tax under § 65-690 of the Code.

There can be no question but that section 9, quoted hereinabove, is a power of attorney. Plaintiff refers to it as a "power of attorney" in his complaint; the plaintiff designates it as "POWER OF ATTORNEY" in the instrument itself; the trial judge calls it a power of attorney and treats it as such in his order; and it fits the description of a power of attorney as defined in Black's Law Dictionary, 1334 (4th ed. 1968). We find no merit in the contention, as argued by counsel for the plaintiff, that it is "really more in the nature of a restricted agency agreement than a true power of attorney." Likewise, there is little appeal in the contention that it is purely incident to the note transaction and in most instances may never be utilized. The fact that the power of attorney is included in the same instrument with the note is of no significance.

The plaintiff argues that the power of attorney grants no authority which the note did not already grant and is therefore exempt from the tax under the terms of the statute (§ 65-690). There can be no doubt that the power of attorney grants additional authority not included in the note. If plaintiff disagrees, it can solve the problem hereafter by simply eliminating the power of attorney section and relying solely upon the note.

The trial judge would look to the legislative intent to determine if such a limited power of attorney should be taxed.

This Court has dealt with the documentary stamp tax in several cases. In each case, the tax has been characterized as being simply a tax levied in relation to an act done within the State in making an instrument. *South Carolina Electric & Gas Co. v. Pinckney*, 217 S. C. 407, 60 S. E. (2d) 851 (1950); *Textron, Inc. v. Livington*, 244 S. C. 380, 137 S. E. (2d) 267 (1964). In *Textron, supra*, at 386, 137 S. E. (2d) at 270, the Court says: "Liability to pay stamp tax, and the amount thereof, is as a general rule determinable from the form and face of the instrument in question."

In construing a statute, the language should be given its ordinary and popular significance without resort to subtle and forced construction for the purpose of limiting its operation. *Martin v. Nationwide Mut. Ins. Co.*, 256 S. C. 577, 183 S. E. (2d) 451 (1971); *Textron, supra*. A court can neither legislate nor construe a statute which is clear. *Ferguson v. Finch*, 310 F. Supp. 1251 (D. C. S. C. 1970).

The legislature has made no distinction between what we might call "limited powers of attorney" and "general powers of attorney." If it had been the legislative intent that only general powers of attorney be taxed it could have so stated. It is common knowledge that a vast percentage, if not a vast majority, of powers of attorney are of a limited nature. The intent of the legislature would appear plain and there is no room for judicial construction.

We conclude that the insurance premium service agreement includes a taxable power of attorney.

The question of who is liable for the tax must hinge on § 65-681 of the Code, which sets up the imposition of the tax and provides:

"There shall be levied, collected and paid . . . by any person who makes, signs, issues, sells, removes, consigns or

ships them *or* for whose benefit or use they are made, . . . the several taxes specified in said sections." (Emphasis added.)

Our Court has said in *Brewer v. Brewer,* 242 S. C. 9, 129 S. E. (2d) 736 (1963) that the word "or" used in a statute marks an alternative, and ordinarily means one or the other of two, but not both. We are of the opinion that in this statute the "or", while marking an alternative, must also be construed as introducing a substitute. That is, it does not set up an alternative of choice available to the Tax Commission but allows an alternative of necessity. We can find no logic in a purely equal alternative, and yet we must give some significance to the "or" and the alternative it provides. We find that the legislature meant "or" as introducing a substitute taxpayer in the event holding the primary taxpayer liable is impracticable.

It is therefore the ruling of this Court that the insurance premium service agreement instrument must have documentary stamps (1) as a note, and (2) as a power of attorney, and that the borrower is primarily liable for the payment of the taxes with the lender being secondarily liable.

Section 65-681 *et seq.,* of the Code, provide for the payment of both documentary stamps on notes and documentary stamps on powers of attorney. It is common knowledge in the banking and lending world, and it is corroborated by an affidavit in the record, that the maker of a note is initially liable for and must pay documentary note stamp tax before a lender will process a loan. It would be unusual for a lender to make a loan to a borrower who refused to affix the stamps. The lender has the right to refuse to make the loan unless the tax is paid on the transaction. By a similar token, one to whom a power of attorney is submitted may refuse to accept it unless the documentary stamp tax is paid on it.

Though the statute does not make the lender nor the recipient of the power of attorney a tax collector, it effec-

tually imposes the tax upon the lender in the case of a note, or the grantee in the case of a power of attorney, if such lender or grantee participates in the transaction without having required payment.

From a practical standpoint, it is virtually impossible for the Tax Commission to collect the tax from all borrowers or grantors. It is practical and is not too difficult for the Tax Commission to pursue the matter by investigating the records of the comparatively few lenders and/or grantees. No undue burden is placed upon the lenders and the grantees by requiring them to see that the tax is paid. The alternative is that the lender or grantee must pay the tax. Here, the grantee of the powers of attorney did not require the grantors to pay the taxes and, accordingly, the grantee is liable.

The order of the lower court is reversed and judgment shall be entered in favor of the Tax Commission.

Reversed.

Moss, C. J., and LEWIS and BRAILSFORD, JJ., concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting) :

Pertinent to the proper disposition of this appeal is the following language from *Fuller v. Tax Commission,* 128 S. C. 14, 121 S. E. 478:

"(W)here the language relied upon to bring the particular person or subject within the law is ambiguous or *is reasonably susceptible of an interpretation that would exclude the person or subject sought to be taxed,* the well-established general rule requires that any substantial doubt should be resolved against the government and in favor of the taxpayer (*United States v. Merriam* [263 U. S. 179], 44 S. Ct. 69, 68 L. Ed. 240). In the application of that general rule there are other recognized principles of construction which are pertinent and may lend controlling weight. Double or multiple taxation upon succession to the

same property is not favored in the law, and a construction of a tax statute that imposes such double taxation will be avoided if not clearly required." (Emphasis added.)

Numerous cases collected in West's South Carolina Digest, under Statutes, Key No. 245, are in accord with the general proposition that any substantial doubt as to legislative intent of a taxing statute has to be resolved against the government and in favor of the taxpayer.

It is also quite well settled that there is always a presumption against a legislative intent to impose a double tax and that the courts will not construe a statute as imposing a double tax unless such intention is clear from its terms or by necessary implication. *Wingfield v. S. C. Tax Commission,* 147 S. C. 116, 144 S. E. 846, 854. The opinion in this case cites and discusses numerous authorities in accord with this proposition.

To say the least, there is, to my mind, a most substantial doubt that the legislature ever intended that the document here involved should be taxed both as a promissory note and as a power of attorney. Therefore, I feel conscientiously impelled to dissent. The majority opinion quite correctly states that the service agreement, here involved, is essentially a promissory note and that being the essential nature of the document, it is, of course, taxable as a promissory note. Other provisions of the instrument are merely aids to the enforcement of the payment of the promissory note. *Inter alia,* the note assigns to the holder as security any and all unearned premiums and dividends which might become payable under the insurance policy or policies financed. To this extent the service agreement partakes of the nature of a chattel mortgage. Upon breach or default by the promissor or maker, under settled principles of law as to chattel mortgages, title to any unearned premiums or dividends would automatically vest in the holder of the instrument. See cases collected in West's South Carolina Digest, Chattel Mortgages, Key No. 162. The power of attorney, one of the

numerous clauses in the service agreement, is put there obviously for the sole and incidental purpose of enabling the holder of the instrument, upon default by the maker, to cancel the insurance and collect from the insurer that to which the holder by then has the lawful title. Thus, while nominally acting as attorney in fact for the maker, in reality it is acting for itself to obtain possession of that to which it is lawfully entitled.

As suggested in respondent's brief, if this type of incidental power contained in a document, which is essentially other than a power of attorney, subjects the document to double taxation, it would follow logically that many other security instruments commonly used in commercial and financial transactions, containing incidental powers, would likewise be subject to double taxation. Could such possibly have been the intent of the General Assembly? I most seriously doubt it.

No case directly in point has been cited by either appellants or respondent. A case more nearly in point than any other disclosed by research is that of *Personal Finance Co. of New York v. Lyons et al.*, 128 Conn. 254, 21 A. (2d) 652. This case was decided under the law of New York where the particular transaction involved originated. A New York statute forbade a finance company to take from a borrower "any confession of judgment or any power of attorney", and further provided that a violation by the finance company would render the transaction void and the loan uncollectible. The borrowers executed a promissory note and chattel mortgage, which latter contained a lengthy provision authorizing the mortgagee, upon default, to seize and sell the mortgaged personal property. The mortgagors contended that such provision was a power of attorney, in violation of the New York statute, thus rendering the transaction void, and the trial court so held.

Upon appeal, the Supreme Court reversed and held that such power of sale was not in the nature of a power of

attorney and not in violation of the New York statute. The Court pointed out that under New York law after default of the mortgagor the mortgagee became the absolute owner of the property, subject only to a right of redemption remaining in the mortgagor, and that under the power of sale the mortgagee was selling the property as its own and not as the agent of the mortgagors.

I regard this decision as logical and persuasive that the purely incidental, nominal power of attorney contained in the service agreement here is not, in fact, a power of attorney within the purview and intent of the taxing statute. I would affirm the judgment of the lower court.