21908

Ruthann M. CONOLEY, a minor under the age of fourteen (14) years, By her Guardian ad Litem, Phyllis Jean CONOLEY, Appellant, v. Frederick F. RIEL and Nancy Riel, Respondents.

(309 S. E. (2d) 291)

*James M. Allison,* of *Yarborough, Mauldin & Allison,* Greenville, *for appellant.*

*Carroll H. Roe, Jr.,* of *Love, Thornton, Arnold & Thomason,* Greenville, *for respondents.*

April 21, 1983.

LITTLEJOHN, Justice.

This dog-bite action was brought by the Plaintiff-Appellant, a three-year-old child, against the Defendants-Respondents, owners of a dog alleged to have bitten the child, causing pain, suffering and mental anguish which necessitated medical treatment and which resulted in permanent scars. At the end of the plaintiff's case, the trial judge directed a verdict in favor of the defendants, holding as a matter of law that there was no liability on the part of the dog owners. Plaintiff has appealed, submitting that the judge erred in failing to submit the issues to the jury. We agree.

The antiquated rule heretofore applied in this state is that all domestic animals are presumed to be not dangerous and before recovery of damages may be had against the owner, the injured party must prove that the animal involved was of a dangerous or vicious nature and that the dangerous propensity was either known or should have been known to the owner. If the dog is known to have bitten some other person on a previous occasion, the rule is the same as if it was known to have a dangerous propensity. *Mungo v. Bennett,* 238 S. C. 79, 119 S. E. (2d) 522 (1961). The question we are called upon to determine in this appeal is: "Is there evidence from which a reasonable inference may be drawn that the dog was known to have been of a vicious propensity?" On the evening of the injury, the child and her parents visited the home of the defendants. The dog was tied to the framework of the garage door. The growling of the dog brought to the attention of those present that the dog had the child "pinned to the driveway." Defendant Nancy Riel is quoted as having said: "Why didn't I put him in the house?" Or, "Why didn't I lock him up?" The evidence further shows that on a previous occasion the dog was seen to be ". . . jumping on the little boy," referring to a nine-year-old youngster who was passing near the home.

The father of the child testified as follows:

Q. Okay. Do you know if anyone other than Ruthann Conoley has had an experience with that dog?

A. Well, my wife recounted one Saturday morning I was sitting at the kitchen table and I saw similar to what she did. The dog was loose that day and the dog normally is always tied up. It was loose that day and this boy was maybe eight or nine years old and he was walking his bicycle in between the two yards. He used that as a cut-through. And the dog went charging out. I could see his teeth that morning and, you know, right at that time Mrs. Riel was out there, you know, right on top on him and she got the dog away, just like that, you know, a split second.

Q. All right. Do you know whether or not the dog bit the boy?

A. Other than what my wife told me that Mrs. Riel had said that the dog had not punctured the skin.

Q. Okay. Did the dog jump upon the boy?

A. Yeah.

Q. Could you describe the boy's composure after the incident?

A. I can't say. You know, I was fifty or sixty feet away. I mean, I'm sure he was scared.

Q. All right, sir. Mrs. Riel was there when that happened?

A. Yes. She was out in the yard. And I was sitting in my kitchen.

He further testified as follows:

Q. Do you know how the dog acts towards strangers?

A. When he's outside?

Q. Yes.

A. Yeah. He will, you know, charge out to the end of his rope and bark.

Witness Phyllis Jean Conoley quoted the defendant, Nancy Riel, as having said: "I know I should have taken him in, I was afraid something like this was going to happen."

While the issue is a close one, we are of the opinion that when the evidence is considered in the light most favorable to the plaintiff, a jury issue was made and the case should be remanded for a trial on the merits.

Hereinabove, we have referred to the rule of law in this state as "antiquated". In *McQuaig v. Brown*, 270 S. C. 512, 242 S. E. (2d) 688 (1978), the Dissenting Opinion, effectively invited counsel to petition under Rule 8, § 10, of this Court, to review our previous holdings. Unfortunately, counsel has failed to seek a change of the rule as permitted. Should the issue arise again in this Court, attention will be given to the feasibility of applying a rule more in keeping with the California rule indicated in *McQuaig*.

Reversed.

LEWIS, C. J., and NESS, J., concur.

GREGORY, J., concurs in result.

HARWELL, J., concurs and dissents.

GREGORY, Justice (concurring):

I agree with the majority opinion and the concurring and dissenting opinion as they hold the evidence creates a jury issue. Since this is the only issue before the Court, I concur in the result only.

HARWELL, Justice (concurring and dissenting):

I concur in the result reached by the majority opinion inasmuch as it holds the evidence creates a jury issue. I disagree, however, with that portion of the opinion which labels as antiquated our "dog bite" rule enunciated in *Mungo v. Bennett*, 238 S. C. 79, 119 S. E. (2d) 522 (1961).

Our rule requires that a party injured by a domestic animal who is seeking to recover damages from the animal's owner must prove that the animal was of a dangerous or vicious nature and that the animal's owners know or should have known of the dangerous propensity. I believe this rule properly disposes of issues in dog bite cases.

Justice Littlejohn stated that the adoption of S. C. Code Ann. § 15-75-30 (1976) created a paradoxical situation between parents and pet owners. *See, McQuaig v. Brown*, 270 S. C. 512, 242 S. E. (2d) 688 (1978), (J. Littlejohn concurring). that code section places strict liability on parents of children who intentionally damage another's property. That law further provides a limit of $1,000 on that liability. The legislature

did not enact a similar law in regards to domestic animals. Until it does, I believe our common law rule should remain unaltered.