517 S.E.2d 11

Kevin NESBITT, Individually and as General Guardian for Valerie M. Nesbitt, a minor, Respondent,

v.

Gloria LEWIS, Gordon W. Lewis and Brenda L. Taylor, Appellants.

No. 2978.

Court of Appeals of South Carolina.

Heard Feb. 10, 1999.

Decided April 26, 1999.

Matthew A. Henderson, of Henderson, Brandt & Vieth, of Spartanburg, for appellants.

Charles P. Edwards, of Spartanburg, for respondent.

STILWELL, Judge:

Gloria Lewis, Gordon Lewis, and Brenda Taylor appeal a jury verdict awarding actual and punitive damages to Kevin Nesbitt, individually and as general guardian for his minor daughter, Valerie, for injuries Valerie sustained when three dogs attacked her. We affirm in part and reverse in part.

## FACTS

Gloria lives in Spartanburg and owns the majority interest in her residence. Her son, Gordon, and daughter, Brenda, inherited minority interests upon the death of her husband, their father. Gloria, who is legally blind, keeps three Chow dogs for security and companionship.[1]

The attack occurred in Gloria's fenced backyard while Kevin was there mowing the lawn and Valerie was with him. Earlier, Kevin asked Gloria about the dogs and Gloria told him they would not be a problem. Initially, Kevin and Valerie petted the dogs, and Valerie played with them without incident for over two hours while Kevin cut the lawn.

When Valerie was out of Kevin's sight, Kevin heard a commotion and realized the dogs were attacking Valerie. Kevin managed to get the dogs off Valerie and then carried her into Gloria's house. Prior to the arrival of the ambulance, one of the dogs ran into the house and started after Valerie. Gloria had to put the dog in another room. Once the ambulance arrived and an attendant began tending to Valerie, another dog entered the house and headed toward Valerie, but the ambulance driver blocked the dog.

Valerie went to the hospital where she underwent surgery. Her injuries required a three-day stay in the hospital and resulted in $6850 in medical bills. The injuries also required

---

1. Brenda and Gloria jointly purchased one Chow dog. One of Gordon's friends gave him the second Chow dog. The two dogs mated resulting in the third dog.

washing and re-dressing the wounds three times a day for several months. The injuries emotionally disturbed Valerie to the point that her mother had to sleep in the room with her for some three to four months with the light on all night. Her injuries caused permanent scars. Valerie testified that because of her injuries she could no longer engage in volleyball, soccer, baseball, or basketball as she formerly did.

The jury granted Kevin $6850 in actual damages and granted Valerie $15,000 in actual damages and $25,000 in punitive damages.

## DISCUSSION

In an action at law on appeal of a case tried by a jury, the jurisdiction of this court extends merely to corrections of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses there is no evidence which reasonably supports the jury's findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

## I.

The appellants first argue that the trial court erred in failing to grant their motion for a directed verdict because the Nesbitts failed to prove the elements of common law negligence. We agree as to Brenda and absolve her from liability but affirm as to Gloria and Gordon.

Prior to 1985, South Carolina followed the "one free bite" rule in dog bite cases. The rule provides that,

domestic animals are not presumed to be dangerous to persons, and before recovery of damages may be had against the owner, the injured party must prove that the particular animal[ ] was of a dangerous, or vicious nature, and that his dangerous propensity was either known, or should have been known to the owner. The negligence that imposes liability upon the owner is the keeping of a dangerous animal with knowledge of its dangerous tendencies, or in the failure to restrain it from injuring persons....

*Hossenlopp v. Cannon*, 285 S.C. 367, 369, 329 S.E.2d 438, 440 (1985) (quoting *Giles v. Russell*, 255 S.C. 513, 180 S.E.2d 201

(1971)); *see also Conoley v. Riel,* 279 S.C. 521, 309 S.E.2d 291 (1983); *McQuaig v. Brown,* 270 S.C. 512, 242 S.E.2d 688 (1978).

In *Hossenlopp* the supreme court adopted a quasi-strict liability rule known as the California rule. *Hossenlopp,* 285 S.C. at 372, 329 S.E.2d at 441. This rule does not require any knowledge of a vicious propensity before liability attaches. *Id.* The rule, however, does not abrogate a requirement of owner-ship and control of either or both the dog and the premises if the injury occurs on private property. Common law concepts control this analysis.

██ "Ordinarily, one in possession of personal property is presumed to be the owner...." *Stephenson Fin. Co. v. Win-gard,* 238 S.C. 506, 511, 121 S.E.2d 1, 3 (1961). "One who controls the use of property has a duty of care not to harm others by its use. Conversely, one who has no control owes no duty." *Miller v. City of Camden,* 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997) (citations omitted); *see* S.C.Code Ann. § 47–3–110 (1987) (placing liability on "the owner of the dog or other person having the dog in his care or keeping.").

██ Clearly, Gordon and Gloria had the requisite posses-sion and control of the dogs and premises to submit the negligence cause of action to the jury. Gloria had possession and control of the dogs whereas Gordon lived with Gloria at the time of the attack and, according to the testimony, tended the dogs, taking them to the veterinarian, feeding them, and playing with them on occasion. Furthermore, Kevin testified that Gordon let Valerie and him into the backyard, an allega-tion Gordon denied.

██ On the other hand, Brenda was married and had lived elsewhere for over five years. She testified that she did not take care of the dogs and that Gloria owned them. Further-more, Brenda owns only a partial interest in the house which she acquired upon her father's intestate death. She does not exercise control over the premises and receives no use or enjoyment therefrom.

We find as a matter of law Brenda did not owe a duty to the Nesbitts because she lacked possession and control over Glo-ria's house and the dogs. *See id.* (noting that one who has no control over property owes no duty); *Stephenson Fin.,* 238 S.C. at 506, 121 S.E.2d at 1 (noting possession creates a

presumption of ownership). The evidence precludes a finding that Brenda owned the dogs or had them in her care or keeping. We therefore reverse that part of the verdict holding Brenda liable.

## II.

█ Next, the appellants argue Kevin and Valerie failed to state a cause of action under § 47–3–110. We disagree. Section 47–3–110 in pertinent part provides:

Whenever any person is bitten or otherwise attacked by a dog while the person is in a public place or is lawfully in a private place, including the property of the owner of the dog or other person having the dog in his care or keeping, the owner of the dog or other person having the dog in his care or keeping is liable for the damages suffered by the person bitten or otherwise attacked. For the purposes of this section, a person bitten or otherwise attacked is lawfully in a private place, including the property of the owner of the dog or other person having the dog in his care or keeping, ... when the person bitten or otherwise attacked is on the property upon the invitation, express or implied, of the owner of the property or of any lawful tenant or resident of the property. If a person provokes a dog into attacking him then the owner of the dog is not liable.

S.C.Code Ann. § 47–3–110 (1987). This statute codified the holding of the *Hossenlopp* case. For that reason, the previous analysis of the common law as it relates to Brenda would result in the same conclusion under the statute.

The statute imposes strict liability on dog owners when the victim is lawfully on the owner's property, except where the victim provokes the dog. *Elmore v. Ramos,* 327 S.C. 507, 510, 489 S.E.2d 663, 665 (Ct.App.1997). There is no evidence in the record that Valerie provoked the dogs. Therefore, Gloria and Gordon are strictly liable if Valerie was lawfully on the property.

█ We find Valerie was at least a licensee and therefore was on the property lawfully. "A licensee is a social guest or a person who is privileged to enter upon land *by virtue of the possessor's consent* . A licensee's presence on the property is for the primary benefit of the licensee, not the owner." *Goode v. St. Stephens United Methodist Church,* 329 S.C. 433, 441,

494 S.E.2d 827, 831 (Ct.App.1997) (citations omitted) (emphasis added), *cert. denied,* (Sept. 28, 1998). Generally, the jury determines whether an individual is a licensee, invitee, or trespasser. *See Hoover v. Broome,* 324 S.C. 531, 538, 479 S.E.2d 62, 66 (Ct.App.1996) (finding it a factual determination whether an individual acted as a licensee or invitee), *cert. dismissed,* (June 2, 1997).

We find sufficient evidence in the record for a jury to conclude Valerie was at least a licensee and thus remained on the property lawfully. Kevin testified he told Gloria he would return to cut the lawn after picking up his daughter from school and that his daughter would probably be with him while he cut the lawn. Kevin also testified Gordon let both Kevin and Valerie into the backyard and that Gordon assured Kevin and Valerie the dogs never bothered anyone.

We find this testimony constitutes sufficient evidence for a jury to find that Gloria and Gordon consented to Valerie's presence thus enabling a jury to conclude Valerie's presence on the property was lawful. Because we find Valerie remained on the property lawfully, the statute mandates awarding her damages.

### III.

█ Gordon and Gloria argue punitive damages are not recoverable under § 47–3–110. We find that punitive damages are not recoverable under the facts of this case and therefore do not address the broader issue of whether punitive damages are ever recoverable under the statute.

█ Actual damages compensate for loss or injury sustained while punitive damages punish the wrongdoer in order to deter such conduct. *Barnwell v. Barber–Colman Co.,* 301 S.C. 534, 537, 393 S.E.2d 162, 163 (1989). "In order for a plaintiff to recover punitive damages, there must be evidence the defendant's conduct was wilful, wanton, or in reckless disregard of the plaintiffs rights." *McCourt v. Abernathy,* 318 S.C. 301, 308, 457 S.E.2d 603, 607 (1995). Such evidence must be clear and convincing. S.C.Code Ann. § 15–33–135 (Supp. 1998).

█ A tort is characterized as reckless, willful, or wanton if it was committed in such a manner or under such circumstances that a person of ordinary reason and prudence

would have been conscious of it as an invasion of the plaintiffs rights. *Taylor v. Medenica,* 324 S.C. 200, 479 S.E.2d 35 (1996). "A conscious failure to exercise due care constitutes wilfulness." *McCourt,* 318 S.C. at 308, 457 S.E.2d at 607. The issue of punitive damages must be submitted to the jury if more than one reasonable inference can be drawn from the evidence as to whether the defendant's behavior was reckless, willful, or wanton. *Graham v. Whitaker,* 282 S.C. 393, 321 S.E.2d 40 (1984).

The uncontradicted evidence reveals that the dogs were enclosed in a fenced-in backyard at the time of the incident, and there is no evidence they were ever allowed to roam freely. Likewise, there is no evidence that any of the dogs ever attempted to attack anyone prior to attacking Valerie. There were at least two offers by the Lewises to put the dogs in the house if Kevin was concerned, but he declined. There is also evidence that Gloria trusted her own grandchildren to play with the dogs.

Therefore, the Nesbitts failed to prove by clear and convincing evidence that Gloria and Gordon behaved in a willful, wanton, or reckless manner. The evidence in the record is insufficient to sustain an award of punitive damages.

In summary, we affirm the finding of actual damages against Gloria and Gordon but reverse the award of punitive damages and a finding of any liability against Brenda.

**AFFIRMED IN PART AND REVERSED IN PART.**

HEARN and HUFF, JJ., concur.