673 S.E.2d 423

**Jennifer Marie HARRIS, Appellant,**

v.

**ANDERSON COUNTY SHERIFF'S OFFICE, Respondent.**

No. 26596.

Supreme Court of South Carolina.

Heard Nov. 5, 2008.

Filed Feb. 9, 2009.

---

R. Lawton McIntosh, of McIntosh, Sherard & Sullivan, of Anderson, for Appellant.

Wm. Douglas Gray, of McNair Law Firm, of Anderson, for Respondent.

Justice KITTREDGE.

This appeal requires the Court to construe section 47–3–110 of the South Carolina Code (1987), the so-called dog bite statute. The narrow question before us is the meaning of the term "or" in section 47–3–110. The broader question requires us to discern the degree, if any, to which the Legislature retained the application of common law principles in section 47–3–110.

In construing the term "or" consistent with its common understanding as a disjunctive, we hold section 47–3–110 allows a plaintiff to pursue a statutory claim against the owner of the dog "or other person having the dog in his care or keeping." Because of the plain language in this statute, we conclude that the Legislature intended to allow a claim against the owner of the dog when another person has the dog in his care or keeping. Moreover, in light of the trial court's determination that statutory liability against a dog owner fundamentally rests on negligence concepts, we address the common law remnant retained in section 47–3–110. For the reasons set forth below, we reverse the grant of summary judgment to the Anderson County Sheriff's Office and remand for trial.

## I.

Deputy Todd Caron of the Anderson County Sheriff's Office kenneled his police dog (Sleuber) at the Happistance Veterinary Clinic (clinic) in Townville, South Carolina, while he was on vacation. Sleuber had a recent history of multiple unpro-

voked attacks, a history well known to Deputy Caron and the sheriff's office. Jennifer Harris worked at the clinic as a veterinary assistant. While kenneled at the clinic, Sleuber attacked Harris, severely injuring her. It is undisputed that Harris did not provoke the attack.

Harris pursued workers' compensation benefits from her employer, the clinic. Harris subsequently filed this lawsuit against the sheriff's office, asserting claims under section 47–3–110 and negligence. Cross-motions for summary judgment were filed. The circuit court focused on the statutory claim and, with respect to a dog owner's liability, read negligence principles into the statute. The circuit court reasoned that the sheriff's office was no longer in control of its police dog (and should not be held responsible) once care of the dog was relinquished to the clinic. In granting the sheriff's office summary judgment, the circuit court held that when a dog owner leaves his dog in the care of another, section 47–3–110 only permits a claim against the "other person having the dog in his care or keeping." Harris appealed, and we granted Rule 204(b), SCACR, certification.

## II.

■ Summary judgment is governed by Rule 56, SCRCP. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Our review is plenary, however, for we are presented with a question of statutory interpretation. *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).

## III.

### A.

We begin our analysis with this Court's decision in *Hossenlopp v. Cannon*, 285 S.C. 367, 329 S.E.2d 438 (1985). In *Hossenlopp*, the Court was presented with a common law negligence claim arising from injuries caused by a dog. At the time, South Carolina adhered to what was commonly referred to as the "one free bite" rule. The "one free bite" rule imposed common law liability against a dog owner only

when the owner knew or should have known of the dog's vicious propensities, that is, there was no liability for the first bite. In *Hossenlopp,* under our policy making role in the common law, we rejected the "one free bite" rule and imposed quasi-strict liability on dog owners by adopting the "California Rule" for dog bite liability. This shift in the common law is reflected in the *Hossenlopp* Court's adoption of the following jury instruction:

> The law of California provides that the owner of any dog which bites a person while such person is on or in a public place or is lawfully on or in a private place, including the property of the owner of such dog, is liable for such damages as may be suffered by the person bitten regardless of whether or not the dog previously had been vicious, regardless of the owner's knowledge or lack of knowledge of any such viciousness, and regardless of whether or not the owner has been negligent in respect to the dog, provided, however, that if a person knowingly and voluntarily invites attack upon himself [herself], or if, when on the property of the dog owner, a person voluntarily, knowingly, and without reasonable necessity, exposes himself [herself] to the danger, the owner of the dog is not liable for the consequences.

*Id.* at 372, 329 S.E.2d at 441.

*Hossenlopp* represents the last time the Court addressed a dog bite case in a purely common law setting. The following year, 1986, the Legislature enacted section 47–3–110:

> Whenever any person is bitten or otherwise attacked by a dog while the person is in a public place or is lawfully in a private place, including the property of the owner of the dog or other person having the dog in his care or keeping, the owner of the dog or other person having the dog in his care or keeping is liable for the damages suffered.... If a person provokes a dog into attacking him then the owner of the dog is not liable.

Section 47–3–110 was enacted in response to *Hossenlopp.* This transition from the common law to the statutory setting, of course, restricts our policy making role and concomitantly requires this Court to discern legislative intent. The juxtaposition of *Hossenlopp* to section 47–3–110 does, however, provide a strong frame of reference for ascertaining legislative

intent. Section 47–3–110 retained *Hossenlopp*'s strict liability against dog owners and additionally imposed liability on any other persons having the dog in their "care or keeping."

## B.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the [L]egislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). The Court will give words their plain and ordinary meaning, and will not resort to a subtle or forced construction that would limit or expand the statute's operation. *Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 609, 663 S.E.2d 484, 488 (2008). The Legislature unmistakably adopted a strict liability approach for injuries caused by dogs, save the situation when the injured party provoked the attack. Traditional principles of statutory construction bolster this interpretation.

In light of the remedial nature of the statute, and its plain language, we find the Legislature intended the word "or" in accordance with its common, disjunctive usage. *Brewer v. Brewer*, 242 S.C. 9, 14, 129 S.E.2d 736, 738 (1963) (noting that the use of the word "or" in a statute "is a disjunctive particle that marks an alternative"); *see also Rollison*, 378 S.C. at 609, 663 S.E.2d at 488 (observing that " '[a] statute remedial in nature should be liberally construed in order to accomplish the object[ive] sought' " (quoting *Inabinet v. Royal Exch. Assurance of London*, 165 S.C. 33, 36, 162 S.E. 599, 600 (1932))).

To construe the term "or" in an atypical manner, limiting the statutory claim of Harris to the clinic, would be inconsistent with the remedial and strict liability underpinnings of the statute. With the singular exception for the circumstance where the injured person provokes the attack, the Legislature has chosen to impose strict liability against dog owners and others having "the dog in [their] care or keeping." § 47–3–110 ("[T]he owner of the dog or other person having the dog in his care or keeping is liable for the damages suffered . . . .").

Strict liability is a policy decision to impose liability regardless of fault. Relieving the dog owner of liability where the dog was in the care or keeping of another would be contrary to the statutory language and run counter to the manifest legislative intent of strict liability. Given the unambiguous

language, allowing a plaintiff to sue either the owner of the dog or the party who assumes the care or keeping of the dog is entirely consistent with a logical construction of section 47–3–110. *Investors Premium Corp. v. S.C. Tax Comm'n*, 260 S.C. 13, 20, 193 S.E.2d 642, 645 (1973) (setting forth the Court's function in discerning legislative intent to interpret words in a statute in a way that both gives meaning to the use of the word and is logical).

The use of the term "or" in section 47–3–110 does not mandate a forced selection for an injured party. With the one exception noted in the statute, the owner of the dog is subject to liability for injuries caused by his dog. Where the person is injured while the dog is in the care or keeping of someone who is not the dog's owner, the injured party may pursue a statutory claim against the owner of the dog or the other person having the dog in his care or keeping.

## C.

■ The dog owner posits two basic arguments to sustain the grant of summary judgment in its favor. First, we are asked to adopt the reasoning of the circuit court which overlaid negligence principles on section 47–3–110's imposition of liability on a dog owner. The circuit court essentially found that the dog owner was no longer in control (and hence not at-fault) once the dog was left at the veterinary clinic. While the statute does implicate considerations of control with respect to the "other person having the dog in his care or keeping," there is no such limitation with respect to the dog owner. Imposing a control requirement or other negligence principles by judicial fiat on the dog owner would impose requirements nowhere found in the statute.[1]

---

1. One rule of statutory construction allows the Court to deviate from a statute's plain language when the result would be so patently absurd that it is clear that the Legislature could not have intended such a result. *State ex rel. McLeod v. Montgomery*, 244 S.C. 308, 314, 136 S.E.2d 778, 782 (1964) ("However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning, when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature, or would defeat the plain legislative intention; and if possible will construe the statute so as to escape the absurdity and carry the intention into effect." (quoting *Stackhouse v. Rowland*, 86 S.C. 419, 422, 68 S.E. 561, 562 (1910))).

Second, the dog owner invites the Court, on policy grounds, to create a "kennel worker exception," and preclude that class of people from asserting statutory strict liability claims against a dog owner. *See Priebe v. Nelson,* 39 Cal.4th 1112, 47 Cal.Rptr.3d 553, 140 P.3d 848, 861 (2006) (recognizing a "kennel exception" and precluding a kennel worker from maintaining a claim against the owner of a dog when injured by the dog while in the performance of his duties as a kennel worker). Because we are confronted with a matter of statutory interpretation, such policy decisions rest exclusively in the Legislature. We are constrained therefore to decline the invitation to create a policy exception to section 47–3–110. Similarly, we acknowledge that application of section 47–3–110's strict liability against dog owners may appear harsh and have unintended consequences. But again, such concerns now lie in the Legislature.

## D.

Because of the dog owner's reliance on, and the trial court's acceptance of, negligence principles to determine statutory liability against a dog owner, we address the limited interplay between section 47–3–110 and the common law. We broach this subject for the benefit of the bench and bar, as some adhere to the belief that section 47–3–110 liability against a dog owner incorporates negligence principles. This belief, while erroneous, is understandable in light of the statutorily imposed liability against those who undertake to provide the care or keeping of a dog.

The Legislature's use of the phrase "care or keeping" clearly requires that the "other person" act in a manner which manifests an acceptance of responsibility for the care or keeping of the dog. To this degree, the Legislature retained the common law principle of duty in determining the liability of the "other person." An example of this relationship be-

---

While we may be concerned with the unintended consequences of applying the clear meaning of section 47–3–110 in every conceivable circumstance, such concerns in this case fall far short of an absurdity that would warrant applying this rule of statutory construction. We decline to construe the statute in a manner to shield this dog owner from liability, for the imposition of strict liability under section 47–3–110 reflects a permissible policy determination of the Legislature.

tween section 47–3–110 and the common law is illustrated in the case of *Nesbitt v. Lewis*, 335 S.C. 441, 517 S.E.2d 11 (Ct.App.1999).

*Nesbitt* involved an unprovoked attack by dogs on a child who was lawfully on private property. The property was owned by three persons, a mother and her two adult children, a son and a daughter. The mother owned the dogs, and she lived on the property with her son. The mother was liable under the statute simply as a result of owning the dogs. The added feature of owning the property and exercising control over the premises, in tandem with providing the care and keeping of the dogs, was a further basis on which to impose liability against the mother.

The son was liable under the statute as a property owner who exercised control over the premises. As concerns the statutory element of "care or keeping," the son "lived with [his mother] at the time of the attack and . . . tended [to] the dogs, taking them to the veterinarian, feeding them, and playing with them on occasion." *Id.* at 446, 517 S.E.2d at 14.

The daughter was the third property owner. She "had lived elsewhere for over five years." The daughter "did not take care of the dogs . . . [and she did] not exercise control over the premises. . . ." *Id.* The *Nesbitt* court reversed a jury verdict against the daughter, noting that the "evidence precludes a finding that [she] owned the dogs or had them in her care or keeping." *Id.* at 447, 517 S.E.2d at 14. The daughter was not liable under the statute for the dog attack, for "she lacked possession and control over [her mother's] house and the dogs." *Id.* at 446, 517 S.E.2d at 14. In short, the daughter owed no duty of care to the injured party. The *Nesbitt* court correctly invoked common law concepts in analyzing and determining the liability of a property owner who does not own the dog which caused the injury.

*Nesbitt*, thus, presents three scenarios under section 47–3–110 when the attack is unprovoked and the injured party is lawfully on the premises. First, the dog owner is strictly liable and common law principles are not implicated. Second, a property owner is liable when he exercises control over, and assumes responsibility for, the care and keeping of the dog. Third, a property owner is not liable under the statute when

he has no control of the premises and provides no care or keeping of the dog. It is the presence or absence of a duty that determines liability in the latter two situations that involve a statutory claim against the "other person having the dog in his care or keeping." To this degree, section 47–3–110 implicates the common law.[2] Our Legislature has spoken clearly in section 47–3–110 that, as concerns a dog owner's liability, negligence principles in general and fault in particular have no place.

## E.

We recognize there remain unanswered questions concerning section 47–3–110. Merely by way of example, we can envision questions arising with regard to principles of indemnification and third party practice under Rule 14, SCRCP. We leave these questions for another day.

## IV.

■ Construing the language of section 47–3–110, and discerning legislative intent, we hold that a person injured by a dog may pursue a claim against the owner of the dog when the injury occurs while the dog is in the care or keeping of another. The Legislature has made a policy decision to hold dog owners strictly liable when the dog bites or otherwise attacks a person who is lawfully on the premises, except when the injured person provoked the attack. The Legislature has further statutorily imposed liability on those who assume the care or keeping of a dog. The grant of summary judgment in favor of the Anderson County Sheriff's Office is reversed and the matter is remanded to the circuit court for trial.

**REVERSED AND REMANDED.**

TOAL, C.J., WALLER and BEATTY, JJ., concur.
PLEICONES, J., concurs in the holding.

---

2. We do not suggest that the "other person" for section 47–3–110 purposes must always be a property owner. There may well be circumstances where a person (who is not the dog owner) has the care or keeping of a dog and property ownership is not relevant.