2014

J.E. CARSON, Respondent v.
LIVING WORD OUTREACH MINISTRIES, INC., Appellant.

(431 S.E. (2d) 615)

Court of Appeals

*John L. Weaver*, of *Gibson & Weaver*, North Charleston, *for appellant.*

*Desa A. Ballard* and *L. Joel Chastain*, both of *Ness, Motley, Loadholt, Richardson & Poole*, Barnwell, *for respondent.*

Heard April 14, 1993.

Decided May 17, 1993.

Shaw, Judge:

Respondent, J.E. Carson, instituted this action against appellant, Living Word Outreach Ministries, Inc. (hereinafter the Church), seeking monetary damages for injury to his property caused by the removal of certain improvements by the Church. The trial judge granted Carson's motion for directed verdict as to liability for removal of an air-conditioning system, leaving the issue of the amount of damages for the jury. The jury returned a verdict for Carson in the amount of $15,263 for damages resulting in the removal of the air-conditioning system. The Church appeals. We affirm.

J.E. Carson, Jeffrey A. Craven and Melvin L. Craven brought this action against the Church alleging the Church entered into an agreement to lease a parcel of land with buildings. The complaint asserted the Church made certain improvements to the property, including the installation of air-conditioning and duct work, and that, upon termination of the lease agreement, the Church removed some of the improvements causing damage to the building. The Church answered denying it had entered an agreement with the other parties, admitted improvements were made to the premises and removed by the Church, but denied the improvements were an integral part of the building or that it had damaged the building by removing the improvements.

A trial was held before a jury in the circuit court. The Church made a motion in limine to exclude any evidence "tending to imply or prove that there was an oral agreement" between the parties which supersedes the express terms of the written contract between Carson and the Cravens. The trial judge reserved his ruling on the matter until he heard evidence. The Church later moved for a directed verdict arguing there was insufficient evidence of an oral contract. The trial judge denied this motion. Upon motion by their own attorney, the Cravens were dismissed as parties with the stipulation that the Church could use their depositions as evidence.

At the close of all evidence, Carson moved for a directed verdict as to the air-conditioning system arguing the only reasonable inference to be drawn from the testimony was that the system was a fixture and a part of the real estate as a matter of law. The Church renewed its directed verdict motion on the basis that there was insufficient evidence of a contract, either oral or written, between the parties that re-

stricted or prohibited the Church in its actions. The trial judge found the units were connected by electrical wire, pipes and duct systems and that the air-conditioning system was a fixture as a matter of law and, thus, ruled he would submit the issue of damages only to the jury. The jury returned a verdict of $15,263 actual damages for the removal of the air-conditioning system. The church made a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial based on the same grounds as in its directed verdict motions. The motion was denied.

The Church raises the following issues on appeal:

1. Whether any contract, written or oral, existed between the parties on appeal.
2. If such contract did exist, whether it was void for lack of a writing under the Statute of Frauds.
3. Whether the trial judge erred in finding that the air-conditioning unit was a fixture as a matter of law because
(a) the air-conditioning unit was not a fixture under the law of fixtures or
(b) the question of whether it was a fixture is a question for the jury.

The record reveals the following facts. On September 30, 1985, Carson entered into a lease agreement with Melvin L. Craven and Jeffrey A. Craven whereby he agreed to lease certain premises for a period of 18 months with rent set at $800 per month. The lease further provided, "Tenant shall have the right to make improvements to the buildings with the written consent of the Landlord but all improvements shall become the property of the Landlord and all cost of same shall be Tenant's responsibility." Shortly after the lease was signed, the Church moved into the building.

Carson testified the Church paid rent of $800 a month for an 18-month period and, thereafter, the parties reached an agreement for rent of $1200 a month for as long as the Church stayed or until they decided to purchase the building. The Church made the checks out directly to Carson. After the Church moved in, certain improvements were made including remodeling of the interior and the installation of heating and air-conditioning units, chandeliers, a water cooler, outside

flood lights, carpet and window air-conditioning units. In September of 1989, the Church moved out of the building taking all of the air-conditioning units and the duct work, the chandeliers, and the water cooler. Carson stated that in removing these items, the Church damaged the ceiling by cutting the overhead joists and completely destroyed the duct work and the casing around the stairway.

Daniel Cooper, the Minister of Living Word Outreach Ministries, testified the Church did not lease the property from Carson. He stated the Cravens were opening the building for a church and he thought Carson was aware the building was to be used as a church, but when Carson found out he became upset. Carson agreed to allow the Church to use the building but indicated he was dealing only with Melvin Craven. He never received a copy of the lease between Carson and the Cravens; however, he did read it. He never sent the Cravens, on either his behalf or the Church's behalf, to deal with Carson.

After moving in, the Church made substantial improvements to the building. After the first 18 months, Cooper met with Carson and Melvin Craven regarding an increase in rent. Cooper stated nothing was agreed to at that meeting, but later in the week, Melvin Craven called him and said he had worked out an agreement with Carson for $1200 a month rent. Melvin Craven was no longer a member of the Church at this time, but told Cooper he would "take care of the $200" if the Church would pay $1,000. The Church started sending Melvin Craven $1200 a month. The Church left the building in September of 1989. Cooper further testified the air-conditioning was put in the building around May of 1986 and that the Church paid for the air-conditioning system by borrowing funds from a bank.

The Church first contends the trial judge erred in "apparently assuming that a contract existed between the parties" and that the existence of a valid and enforceable contract was a question of fact to be resolved by the jury. The existence of a contract, whether written or oral, is immaterial.

It is clear from the record that Carson did not rely on a written contract. In fact, the written lease was introduced into evidence, not by Carson, but by the Church.

S.C. Code Ann. § 27-33-10 (1976) provides in part:

(3) Tenant at will.—Every person other than the owner of real estate . . . using or occupying real estate without an agreement, either oral or in writing, shall be deemed a "tenant at will";

An express agreement is not necessary to create the relation of landlord and tenant, but such relation may arise from the implied agreement of the parties, and may be established by proof of circumstances authorizing the inference that the parties intended to assume such relation toward each other. 51C C.J.S. *Landlord and Tenant* § 9 at 42 (1968). A tenant is one who occupies the premises of another in subordination to that other's title and with his assent, express or implied. *Columbia Ry., Gas & Electric Co. v. Jones*, 119 S.C. 480, 112 S.E. 267 (1922). After termination of a lease, one continuing to occupy the premises, absent a new agreement, express or implied, comes squarely within the definition of a tenant at will.

*Townsend v. Singleton*, 257 S.C. 1, 183 S.E. (2d) 893 (1971).

Thus, even if there was no written or oral agreement between the parties, the Church was, at the very least, a tenant at will. It is this relationship which creates obligations between the parties and the fact that there may have been no express agreement between the parties is immaterial.

The Church next asserts any contract that might exist is void for lack of writing under the Statute of Frauds. The Church clearly misunderstands the statute as related to this fact situation. S.C. Code Ann. § 27-35-20 (1976) provides, "Any agreement for the use or occupation of real estate *for more than one year* shall be void unless in writing." (Emphasis added.) There is evidence that the Church had become, at the very least, a tenant at will. However, there is no evidence of any oral agreement for the use or occupation of real estate for more than one year. Further, as noted above, the existence of any contract is immaterial.

Finally, the Church asserts the air-conditioning system was not a fixture based on the law of fixtures and, at any rate, such was an issue that should have been submitted to the jury. We disagree.

Generally whatever is once annexed to the freehold becomes part of it and cannot afterward be removed except by him who is entitled to the inheritance. *City of*

*Greenville v. Washington American League Baseball Club,* 205 S.C. 495, 32 S.E. (2d) 777 (1945).

A fixture is generally defined as an article which was a chattel, but by being physically annexed to the realty by one having an interest in the soil becomes a part and parcel of it. By mere affixation the chattel does not become a fixture. The test for determining whether an item remains personalty or becomes a fixture include the following criteria: (1) mode of attachment, (2) character of the structure or article, (3) the intent of the parties making the annexation, and (4) the relationship of the parties. *Creative Displays, Inc. v. South Carolina Highway Department,* 272 S.C. 68, 248 S.E. (2d) 916 (1978). *See* also *South Carolina Department of Highways and Public Transportation v. Najma Records, Inc.,* 288 S.C. 169, 341 S.E. (2d) 649 (Ct. App. 1986).

In disputes between landlord and tenant, there is a general presumption that the tenant, by annexing fixtures, did so for his own benefit and not to enrich the freehold, and the law accordingly construes the tenant's right to remove his annexations liberally, *except where removal may materially injure the freehold. Ilderton Oil Company v. Riggs,* 13 N.C. App. 547, 186 S.E. (2d) 691 (1972). *See* also 36A C.J.S. *Fixtures* § 33 at 680 (1961).

A fixture involves a mixed question of law and fact. It is incumbent on the court to define a fixture; but whether it is such in a particular instance depends upon the facts of that case, unless the facts are susceptible of but one inference. *Rawls v. American Central Insurance Company,* 97 S.C. 189, 81 S.E. 505 (1914).

The evidence of record shows the removal of the air conditioning system caused substantial material injury. Considering the above law of fixtures, we hold, under the facts of this case, the only reasonable inference is that the air-conditioning system was a fixture.

Affirmed.

CURETON AND GOOLSBY, JJ., concur.