534 S.E.2d 720

Kinsli Jaid BRUCE and Jodie Bruce, Appellants,

v.

Lisa M. DURNEY, Walter J. Durney, Jr. and
Xen K. Motsinger, Respondents.

No. 3208.

Court of Appeals of South Carolina.

Heard June 5, 2000.

Decided July 3, 2000.

Rehearing Denied Sept. 2, 2000.

564

Jonathan R. Hendrix, of Williams, Hendrix, Steigner & Brink, of Lexington, for appellant.

David C. Slough and John T. Lay, both of Ellis, Lawhorn & Sims, of Columbia; and Patrick J. Frawley, of Nicholson, Davis, Frawley, Anderson & Ayer, of Lexington, for respondents.

ANDERSON, Judge:

Jodie Bruce brought this action on behalf of her minor daughter, Kinsli Jaid Bruce, after Kinsli was allegedly bitten by a dog owned by Lisa M. Durney and Walter J. Durney, Jr. Lisa's father, Xen K. Motsinger, was also named as a defendant because the Durneys lived on property owned by Motsinger. The alleged incident occurred off the premises of the Durneys. The circuit court granted Motsinger's motion for summary judgment, finding as a matter of law that he was not liable for the minor's alleged injuries. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On January 2, 1998, Kinsli was visiting a neighbor next door to the Durneys' residence at 212 Sausage Lane in West Columbia when she was allegedly bitten by the Durneys' black Chow named "Buffalo" while in the neighbor's yard.[1] There were no witnesses to the incident. The Durneys have owned the Chow since it was a puppy. The Durneys are the sole owners and caregivers of the dog.

Bruce and her daughter live next door to the Durneys. The Durneys have resided in the home since 1988. The property is approximately three quarters of an acre. Motsinger is the father of Lisa Durney, and he has been the record owner of the property since approximately 1995. The Durneys originally owned the property but transferred it to Motsinger after they experienced financial difficulties. Motsinger did not charge his daughter any rent and the parties had no lease. Motsinger does not live on the property; rather, he has resided for forty years in his own home in Cayce. However, he visits his daughter and grandchildren an average of once a week. Motsinger was not present when the child was allegedly bitten.

Bruce brought this action on behalf of her daughter against the Durneys as the dog's owners and against Motsinger because he was the record owner of the property. Bruce alleged Motsinger knew or reasonably should have known of the dangerous condition created by the Durneys allowing their dog to be unrestrained and that he failed to take action as the landowner to remedy the condition. She alleged Motsinger had the right to control the activities of the Durneys because they lived on property owned by him and he negligently failed to do so.

Motsinger answered, denying the allegations, and subsequently moved for summary judgment. The circuit court granted Motsinger's motion for summary judgment. The court held, as a matter of law, that a landlord or property

---

1. In their depositions, the Durneys contended Kinsli was in the yard of another person who also owned a Chow dog when she was bitten, and they questioned whether it was their dog who bit Kinsli. However, for purposes of the summary judgment motion, it was assumed they were the owners of the dog which bit Kinsli.

owner cannot be held liable to a third person for the attack of an animal owned by the tenant or resident living on the owner's property. The court held that even if Motsinger was not considered to be a landlord to the Durneys, (because of the absence of a lease and rental payments), its ruling would be the same because S.C.Code Ann. § 47–3–110 (1987) provides a dog owner or a person caring for or keeping a dog is liable if the dog bites or otherwise attacks someone. The court found the statute evidences a legislative intent for liability to rest with the dog owner or caregiver.

## ISSUE

I. Did the circuit court err in finding a landlord and tenant relationship existed between Motsinger and the Durneys?
II. Did the circuit court err in finding Motsinger, regardless of whether he was a landlord, has no liability for the injuries sustained by Kinsli when she was bitten by a dog kept on the property he owned?

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. *See also Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997).

In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment. *Summer v. Carpenter,* 328 S.C. 36, 492 S.E.2d 55 (1997); *Hamiter v. Retirement Div. of South Carolina,* 326 S.C. 93, 484 S.E.2d 586 (1997); *City of Columbia v. American Civil Liberties Union,* 323 S.C. 384, 475 S.E.2d 747 (1996).

## LAW/ANALYSIS

### I. Status as Landlord

#### A. South Carolina Residential Landlord Tenant Act

■ Bruce argues there was no landlord/tenant relationship created between Motsinger and the Durneys. Essentially,

Bruce contends there was no rent paid and no rental agreement between the Durneys and Motsinger; therefore, Motsinger could not be a landlord under the South Carolina Residential Landlord and Tenant Act (RLTA), S.C.Code Ann. § 27–40–10 et seq. We disagree.

South Carolina Code Ann. § 27–33–10 (Supp.1999) provides the general definitions for landlord and tenant. It reads:

(7) Landlord.—"Landlord" shall be construed to include the owner or person in possession or entitled to possession of the real estate used or occupied by the tenant. . . .

(8) Tenant.—"Tenant" shall be construed to mean tenant at will, tenant for a term, tenant for years, domestic servant, farm laborer, sharecropper, and agricultural renter.

The terms are more specifically defined by the RLTA.

(6) "landlord" means the owner, lessor, or sublessor of the premises, and it also means a manager of the premises who fails to disclose as required by § 27–40–240.

S.C.Code Ann. § 27–40–210(6) (Supp.1999). Under the RLTA, we need to further define owner to determine if Motsinger is capable of being a landlord under the act.

(8) "owner" means one or more persons, jointly or severally, in whom is vested (i) all or part of the legal title to property or (ii) all or part of the beneficial ownership and a right to present use and enjoyment of the premises.

S.C.Code Ann. § 27–40–210(8) (Supp.1999).

It is agreed that Motsinger is the owner of the property. It was transferred to him by the Durneys when they were in financial difficulties. Bruce relies on Motsinger's ownership as the basis of his liability. The main question is whether the Durneys come under the definition of a tenant, thus giving rise to the relationship proposed by Motsinger as grounds for his defense.

The RLTA defines tenant:

(15) "tenant" means a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others.

S.C.Code Ann. § 27–40–210(15) (Supp.1999). Bruce maintains there is no written rental agreement and, therefore, the Durneys cannot be tenants under the RLTA. However, under the RLTA a written rental agreement is not necessary.

(12) "rental agreement" means all agreements, written or oral, and valid rules and regulations adopted under § 27–40–520 embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises.

S.C.Code Ann. § 27–40–210(12) (Supp.1999).

By its express terms, the RLTA does not require written rental agreements, but allows for a tenancy to be created by an oral agreement. This does not eliminate the requirement that a tenancy for more than one year be in writing to be valid under the Statute of Frauds. *See* S.C.Code Ann. § 27–35–20 (Supp.1999) ("Any agreement for the use or occupation of real estate for more than one year shall be void unless in writing.")

Testimony by Motsinger establishes he allowed the Durneys to live on the property.

Q. What is your arrangement with your daughter and son-in-law as far as them living there? What exactly is the arrangement between you and your—

A. **There's no written arrangement, verbally that they can live there.**

Q. Do they pay you rent?

A. No.

Q. As I understand it then, there's not—you're saying that there's not a **formal** landlord/tenant relationship between you and your daughter?

A. That's right.

Q. You **verbally** have told them they can live there and have taken no action to get them off?

A. That's right.

(Emphasis added.)

While Motsinger acknowledged there was no formal landlord/tenant relationship in the form of a written contract, he did indicate there was a "verbal" arrangement whereby his daughter and her husband were allowed to live on the property.

■ Bruce avers there was no landlord/tenant relationship, because the Durneys did not pay rent. The payment of rent is not required by the RLTA to constitute a valid landlord/ten-

ant relationship. South Carolina Code Ann. § 27–40–310 states:

(a) A landlord and a tenant *may* include in a rental agreement terms and conditions not prohibited by this chapter or other rule of law, *including rent,* term of the agreement, and other provisions governing the rights and obligations of the parties.

There is no mandate under S.C.Code Ann. § 27–40–310 for a rental agreement to include the payment of rent. In this case, the agreement provides for no rent in the form of money paid to Motsinger. Lisa Durney explained her father allowed her and her husband to live on the property: "Out of the goodness of his heart." Bruce did not point out any rule of law which prohibits someone from renting their property for free if that is the intent of the parties. "Rent is a normal, but not an essential, incident of the relationship of landlord and tenant." 49 Am.Jur.2d *Landlord and Tenant* § 676 (1995). We agree the Durneys are not common tenants, but under the RLTA, all requirements for a landlord/tenant relationship have been met.

## B. Tenant at Will

■ Even if no formal agreement was reached between the parties, the Durneys would still be tenants at will. South Carolina Code Ann. § 27–33–10(3) (1976) explicates:

(3) Tenant at will.—Every person other than the owner of real estate, ..., using or occupying real estate without an agreement, either oral or in writing, shall be deemed a "tenant at will."

In *Carson v. Living Word Outreach Ministries, Inc.,* 315 S.C. 64, 431 S.E.2d 615 (Ct.App.1993), this Court enounced:

An express agreement is not necessary to create the relation of landlord and tenant, but such relation may arise from the implied agreement of the parties, and may be established by proof of circumstances authorizing the inference that the parties intended to assume such relation toward each other. 51C C.J.S. *Landlord and Tenant* § 9 at 42 (1968). A tenant is one who occupies the premises of another in subordination to that other's title and with his assent, express or implied. *Columbia Ry., Gas & Electric*

*Co. v. Jones,* 119 S.C. 480, 112 S.E. 267 (1922). After termination of a lease, one continuing to occupy the premises, absent a new agreement, express or implied, comes squarely within the definition of a tenant at will. *Townsend v. Singleton,* 257 S.C. 1, 183 S.E.2d 893 (1971).

Thus, even if there was no written or oral agreement between the parties, the Church was, at the very least, a tenant at will.

*Carson,* 315 S.C. at 69, 431 S.E.2d at 618.

Even if this Court held there was no agreement, the relationship between the Durneys and Motsinger would still be that of a landlord and a tenant at will.

## II. Liability as Landlord

Bruce asserts Motsinger should be held liable for the injuries sustained to Kinsli when the Durneys' dog bit her. They argue a landowner who knows a vicious animal is being kept on his property has a duty to either remove or control that animal, and if that is not done then the landowner should be held liable. We disagree.

In *Mitchell by Mitchell v. Bazzle,* 304 S.C. 402, 404 S.E.2d 910 (Ct.App.1991), this Court enunciated:

We hold that the trial judge's order based upon the law of premises liability as announced in the case of *Uccello v. Laudenslayer,* 44 Cal.App.3d 504, 118 Cal.Rptr. 741 (1975), erroneously denied Peebles' motions for directed verdict and judgment n.o.v.

The *Uccello* court premised a landlord's liability on his knowledge of the vicious propensities of the animal kept on the property by the tenants. The court declared:

We hold that a duty of care arises when the landlord has actual knowledge of the presence of the dangerous animal and when he has the right to remove the animal by retaking possession of the premises.

. . . .

[I]f a landlord has such a degree of control over the premises that it may fairly be concluded that he can obviate the presence of the dangerous animal and he has knowledge

thereof, an enlightened public policy requires the imposition of a duty of ordinary care.

*Uccello v. Laudenslayer,* 44 Cal.App.3d 504, 118 Cal.Rptr. 741, 743–47 (1975). Bruce's main argument is Motsinger had knowledge of the Durneys' dog's viciousness, but did not seek to have it restrained or removed from the property. This reasoning was rejected by the *Mitchell* court in South Carolina.

We realize that a landowner must use his land in such a way as not to injure adjoining landowners. 2 C.J.S. *Adjoining Landowners* § 2 (1972); 1 Am.Jur.2d *Adjoining Landowners* § 2 (1962). But, after very careful research, except for *Uccello,* we find no authority imposing vicarious liability upon a landowner for the injuries caused by a tenant's dog....

Since at the time of the attack South Carolina did not have a statute similar to the California statute upon which *Uccello* was based, we hold that we are not bound by *Uccello.* The facts of the case before us occurred prior to the effective date of the RLTA. As noted, the case law prior to the enactment of the RLTA imposes no legal duty on the part of the landlord to keep in repair and safe condition leased rental premises under the control of his tenant.

The Supreme Court of South Carolina discussed the same situation arising after the adoption of the RLTA. In *Fair v. United States,* 334 S.C. 321, 513 S.E.2d 616 (1999), the Court approved the *Mitchell* decision and further annunciated:

We construe § 27–40–440(a)(2) in conjunction with § 27–40–510(2) and hold that under the RLTA, a landlord may be held liable only for defects relating to the inherent physical state of the leased premises. Accordingly, we answer the certified question as follows: The "fit and habitable" provision of the RLTA found in § 27–44–40(a)(2) does not alter the common law rule that a landlord is not liable to a tenant's invitee for injury caused by a tenant's dog.

*Fair,* 334 S.C. at 324, 513 S.E.2d at 617. South Carolina has established that a landlord is not liable for injuries caused by an animal kept by a tenant on leased property. Motsinger is therefore not liable for the injuries caused by the Durneys' dog when it bit Kinsli.

### III. Liability as Private Landowner

■ Alternatively, the circuit court held that even if Motsinger is not considered to have a landlord/tenant relationship with his daughter and son-in-law, he was not liable as a matter of law in his status as a private landowner because he was not the dog's owner or caregiver. The court cited § 47-3-110 of South Carolina Code, which places liability for a dog bite on the owner of the dog or the person having the dog in his care or keeping. Section 47-3-110 provides:

Whenever any person is bitten or otherwise attacked by a dog while the person is in a public place or lawfully in a private place, including the property of the owner of the dog or other person having the dog in his care or keeping, *the owner of the dog or other person having the dog in his care or keeping is liable for the damages suffered by the person bitten or otherwise attacked.* For the purposes of this section, a person bitten or otherwise attacked is lawfully in a private place, including the property of the owner of the dog or other person having the dog in his care or keeping, when the person bitten or otherwise attacked is on the property in the performance of any duty imposed upon him by the laws of the State, by the ordinances of any political subdivision of this State, by the laws of the United States of America, including, but not limited to, postal regulations, or when the person bitten or otherwise attacked is on the property upon the invitation, express or implied, of the owner of the property or of any lawful tenant or resident of the property. If a person provokes a dog into attacking him then the owner of the dog is not liable.

S.C.Code Ann. § 47-3-110 (1987) (emphasis added).

In *Nesbitt v. Lewis,* 335 S.C. 441, 517 S.E.2d 11 (Ct.App. 1999), this Court found summary judgment was appropriate as to one owner with a partial interest in residential property where the owner did not reside at the property or have the dogs in her care or keeping. In *Nesbitt,* the home was owned by a mother and her son and daughter. The mother had the majority interest in the property, and her adult children inherited their minority interests upon her husband's death. The mother owned three Chow dogs which allegedly bit a child in her yard. The son lived in the home with his mother and was the caregiver and keeper of the dogs. We affirmed the circuit court's grant of summary judgment to the daughter

because she had not lived in the home for five years, and she did not care for or keep the dogs.

Other states have construed similar statutes and reached the same result. *See Boylan v. Everett,* 172 Mass. 453, 52 N.E. 541 (1899) (The mere fact that a dog is kept by its owner on another's premises, with the premises owner's knowledge, acquiescence, or permission, does not of itself make the premises owner the dog's keeper.); *Goennenwein by Goennenwein v. Rasof,* 296 Ill.App.3d 650, 231 Ill.Dec. 24, 695 N.E.2d 541 (1998) (Property owner who exercised no degree of care, custody, or control over her son's dog, who bit owner's minor guest while on owner's premises, was not dog's "owner" within meaning of Animal Control Act.); John P. Ludington, Annotation, *Who "Harbors" or "Keeps" Dog Under Animal Liability Statute,* 64 A.L.R.4th 963 (1988) (Keeping has a proprietary aspect. Reference is sometimes made to the keeper's "dominion" over the dog. Keeping is often defined in terms of the three C's—that is, that keeping is exercising some measure of care, custody, or control over the dog.).

The Appeals Court of Massachusetts discussed a very similar situation in *Brown v. Bolduc,* 29 Mass.App.Ct. 909, 556 N.E.2d 1051 (1990). The property owners were sued after their daughter's dog bit a party invitee. The property owners allowed their daughter to live rent free on the property. They knew the daughter kept the dog, and on a few occasions, provided it water while they were caring for their horses kept at the same property. The court examined a similar statute to ours which placed liability on the "owner or keeper," and concluded the parents were not liable under the statute because they were not the "owners or keepers" of the dog.

In *Smith v. Isaacs,* No. Civ.A. 97C09028, 1999 WL 1240833 (Del.Super. Sept.21, 1999), the owner of the property allowed the dog and its owner to reside at her home. The property owner did not take care of the dog; however, she allowed the dog to sleep in the enclosed porch of her home. The court was asked to determine if the property owner was a "custodian" or "owner" of the dog for purposes of liability. The court concluded the property owner was not in sufficient control of the animal to consider her a "custodian."

Motsinger allowed the dog to be kept on property on which he did not live. To this extent he did exercise some measure

of control, but this is not sufficient to call him the dog's "keeper." Motsinger visited the property, but there is no evidence he provided any care or support for the dog. Custody was maintained by the Durneys, care was provided by the Durneys, and the Durneys were in almost complete control over the animal. The Durneys were the obvious owners and keepers of the animal. Motsinger cannot be held liable as the property owner under S.C.Code Ann. § 47–3–110.

## CONCLUSION

We hold the relationship between the Motsinger and the Durneys was that of a landlord and tenants. While there was no written agreement, the record establishes Motsinger allowed his daughter and son-in-law to live on the property. Even if they are not formal tenants under the South Carolina Residential Landlord Tenants Act, they are tenants at will under *Carson v. Living Word Outreach Ministries, Inc.*, 315 S.C. 64, 431 S.E.2d 615 (Ct.App.1993). We rule Motsinger as a landlord was not liable for the injuries sustained by Kinsli when the Durneys' dog bit her. Even assuming Motsinger was not a landlord, we conclude he would still not be the dog's "owner" or "keeper" under S.C.Code Ann. § 47–3–110, and therefore would not be liable as a property owner. Accordingly, the decision of the trial court to grant summary judgment is

**AFFIRMED.**

HEARN, C.J., and HUFF, J., concur.