# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Rufus Rivers and Merle Rivers, Respondents,

v.

James Smith Jr., Petitioner.

Appellate Case No. 2023-001318

_____

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

_____

Appeal from Orangeburg County
Edgar W. Dickson, Circuit Court Judge

_____

Opinion No. 28260
Submitted January 15, 2025 – Filed February 19, 2025

_____

## REVERSED

_____

Kathleen McColl McDaniel and Sarah Jean Michaelis Cox, of Burnette Shutt & McDaniel, PA, Columbia, for Petitioner.

Rufus Rivers and Merle Rivers, pro se, of Orangeburg, Respondents.

_____

**JUSTICE FEW:** James Smith Jr. brought this civil action against Rufus and Merle Rivers in magistrates court, alleging he is their landlord and they are his tenants, and seeking to evict them from their home. The Rivers defended on the ground Smith did not own the property on which their home was located. The magistrates court

agreed with Smith and issued an order evicting the Rivers.  The circuit court affirmed the eviction order.  The court of appeals reversed, however, finding subsection 22-3-20(2) of the South Carolina Code (2025) prohibited the magistrates court from conducting the eviction proceeding because the Rivers challenged Smith's title to the property.  *Rivers v. Smith*, 440 S.C. 183, 188-90, 889 S.E.2d 254, 256-57 (Ct. App. 2023).  We reverse the court of appeals and reinstate the eviction order.

## I.      Facts and Procedural History

In 2009, Jessie Mae Smith owned the home at 1429 LeGrand Smoak Street in Cordova, Orangeburg County, South Carolina.  Beginning then, Jessie Mae allowed Rufus and Merle Rivers to live in the home rent free.  There was never a written lease agreement.

In 2013, Jessie Mae executed a power of attorney designating her son—James Smith Jr.—as her "authorized agent."[1]  The power of attorney allowed Smith to spend Jessie Mae's finances, sell or dispose of her property, and make healthcare decisions for her.

In 2014, Smith—acting on behalf of Jessie Mae pursuant to the power of attorney—transferred the Cordova property to himself by executing a quitclaim deed.  On October 9, 2014, the deed was recorded in the Orangeburg County Register of Deeds office.  The record before us contains no evidence of the circumstances that led to the transfer.  Jessie Mae died in 2016.

In July 2018, Smith wrote the Rivers a letter stating he planned to sell the property and the Rivers had thirty days to vacate the home.  The Rivers then sent Smith a letter demanding he "cease and desist" from his efforts to evict them, alleging he held an invalid power of attorney and breached his fiduciary duties to Jessie Mae when he used his power of attorney to convey the property to himself.

On August 6, 2018, the Rivers sued Smith in the Orangeburg County court of common pleas.  The complaint alleged Smith used "an invalid Power-of-Attorney . . . to execute an invalid quitclaim deed to himself . . . transferring property that was gifted to the plaintiffs."  The complaint alleged Smith breached his fiduciary duties to Jessie Mae and participated in "unauthorized self-dealing."  The Rivers brought

---

[1] We refer to James Smith Jr. as "Smith" and Jessie Mae Smith as "Jessie Mae."

causes of action for constructive fraud, negligence, conversion, unjust enrichment, and what they called "invalid owner."

At about the same time, Smith filed a "Rule to Vacate or Show Cause (Eviction)" in magistrates court, which was signed by a magistrate judge on August 8, 2018. On September 17, 2018, the Rivers filed a "Reply: To Rule To Show Cause" requesting the magistrates court dismiss the eviction action and "incorporate" the matter into the pending circuit court case.

Later in September, the magistrates court (Judge Stephanie McKune-Grant) held a hearing on the eviction action. At the hearing, Smith's counsel presented to the court a copy of the power of attorney; the deed to the property; and a printed document from the online registry of the Orangeburg County Tax Assessor's Office, identifying Smith as the current owner of record of the property at 1429 LeGrand Smoak Street.

Rufus Rivers testified at the hearing. He testified that in 2009 Jessie Mae orally agreed to let the Rivers live on the property rent free and "verbally agreed to gift the property to" the Rivers. Rivers also discussed the pending circuit court case and presented documents filed in that case. At the conclusion of the hearing—as the court of appeals wrote—Judge McKune-Grant "orally ruled that [Smith] was the current and lawful owner of the property, [and] that the Rivers were tenants." 440 S.C. at 186, 889 S.E.2d at 256. Based on that ruling, Judge McKune-Grant ordered the Rivers to be evicted from the home.

The day after the hearing, the Rivers filed a motion for reconsideration with the magistrates court. The Rivers argued—among other things—that the magistrates court "lacked jurisdiction when presiding and rendering judgment in the matter." They argued the court improperly proceeded despite being informed of a pending circuit court case challenging both Smith's ownership of the property and the validity of the power of attorney and deed. The Rivers also filed an "Ex-Parte Motion to Vacate Writ of Ejectment," stating the magistrates court was barred from presiding over a matter where there is a question of title.

In October, Judge McKune-Grant held a hearing on the motions. Rufus Rivers argued no landlord-tenant relationship existed and the power of attorney and deed were not valid. Judge McKune-Grant denied the motions, reasoning the court "had maintained proper jurisdiction over landlord-tenant matters where in this case, there was no question in title regarding the owner's identity." The Rivers appealed her decision to the circuit court.

While the appeal of the eviction order was pending in circuit court, Judge James Jackson Jr., Orangeburg County master in equity, dismissed the Rivers' circuit court lawsuit for failure to state facts sufficient to constitute a cause of action. Judge Jackson determined the Rivers had no standing to bring a claim for breach of fiduciary duty and the statute of frauds prohibits oral transfers of real property. The Rivers did not appeal his decision.

In October 2019, Circuit Court Judge Ed Dickson held a hearing on the appeal from the magistrates court's eviction decision. The Rivers argued the magistrates court "lacked subject matter jurisdiction" to hear the eviction proceeding under subsection 22-3-20(2) because title was in question.

Judge Dickson affirmed the magistrates court's decision, finding:

> Smith owns the Property at issue here. Smith holds recorded title to the Property, proof of which he presented to the Magistrate and which is included in the Magistrate's Court Return for Appeal. Although the Rivers attempted to challenge Smith's title to the Property, this challenge was dismissed by the Master in Equity for failure to state a claim upon which relief can be granted. There is no evidence in the record that would indicate that Smith is not the owner of the Property.

Judge Dickson specifically found, "The Magistrate's Court properly determined there was a landlord-tenant relationship between the parties."

The Rivers appealed Judge Dickson's decision to the court of appeals, which reversed. *Rivers*, 440 S.C. at 190, 889 S.E.2d at 257-58. The court of appeals began its analysis by observing "there do not appear to be many cases interpreting [subsection 22-3-20(2)]; certainly not any modern ones." 440 S.C. at 188, 889 S.E.2d at 257. The court then concluded, "Precedent explains the magistrate retains jurisdiction if the defendant does not comply with the statutory procedure for raising a question as to title or offer any evidence drawing title into question." 440 S.C. at 188, 889 S.E.2d at 257. The court of appeals held the Rivers complied with the statutory procedures for challenging title by filing a lawsuit against the Rivers in circuit court. 440 S.C. at 189, 889 S.E.2d at 257. Then applying its interpretation of subsection 22-3-20(2), the court of appeals stated, "our reading of precedent convinces us the magistrate's jurisdiction ends as soon as it becomes clear that there

is a challenge to title . . . ." *Id.*[2] Smith filed a petition with this Court for a writ of certiorari to the court of appeals, which we granted.

## II.    Analysis

The statute that is now subsection 22-3-20(2) was enacted in 1870 as a part of Act 300, which—as it relates to this case—has not been amended since then except to add the word "magistrate" in place of the original "trial justice."[3] *See infra* note 4. The subsection provides, "No magistrate shall have cognizance of a civil action . . . [w]hen the title to real property shall come into question, except as provided in Article 11 of this chapter."   S.C. Code Ann. § 22-3-20(2) (2025).   From the beginning, tenants in landlord-tenant relationships subject to eviction proceedings attempted to use the statute to avoid being evicted by claiming the purported landlord did not have title to the property.

In 1878 and 1924, however, we interpreted the statute in two distinct but complementary ways, each of which specifically permitted magistrates to proceed with eviction cases even in light of such a claim, neither of which is acknowledged in the court of appeals' opinion in this case, and both of which are squarely inconsistent with the court of appeals' reasoning here. *See State v. Fickling*, 10 S.C.

---

[2] The omitted language in this quotation is ". . . and the traditional landlord-tenant relationship does not exist." *Id.*  We will discuss this throughout the opinion.

[3] The statute that is now section 22-3-20 of the South Carolina Code (2025) was originally part of the South Carolina Code of Procedure.  Act No. 300, 14 Statutes of S.C., 441 (1870).  Section 81 of the Code of Procedure of South Carolina was amended once in 1873, removing subsection four—"Nor of an action against an executor or administrator as such." Code of Procedure of South Carolina § 81 (1870) (amended by Act No. 412, 15 Statutes of S.C., 496 (1873)).  From 1902-1942, section 22-3-20 was located in the South Carolina Code of Civil Procedure. *See* Code of Civil Procedure of South Carolina § 78 (1902); Code of Civil Procedure of South Carolina § 87 (1912); Code of Civil Procedure of South Carolina § 220 (1922); Code of Civil Procedure of South Carolina § 264 (1932); Code of Civil Procedure of South Carolina § 264 (1942).  In 1952, the statute appeared in the South Carolina Code of Laws. *See* Code of Laws of S.C. § 43-52 (1952); Code of Laws of S.C. § 43-52 (1962).  By 1976, the statute was located in section 22-3-20, where it remains today. *See* S.C. Code Ann. § 22-3-20 (1976); S.C. Code Ann. § 22-3-20 (1989); S.C. Code Ann. § 22-3-20 (2007); S.C. Code Ann. § 22-3-20 (2025).

301, 303 (1878) (holding the 1870 General Assembly did not intend to prohibit an eviction proceeding simply because the tenant claims the purported landlord does not have title); *Stewart-Jones Co. v. Shehan*, 127 S.C. 451, 457, 121 S.E. 374, 376 (1924) (holding the tenant's entry into a landlord-tenant agreement requires that "the tenant is estopped to deny the title he has contracted to recognize, and may not inject that issue to deprive the magistrate of jurisdiction in a proceeding under the statute"); *see also Bamberg Banking Co. v. Matthews*, 132 S.C. 130, 133, 128 S.E. 718, 719 (1925) (affirming an order of eviction based on the reasoning of *Stewart-Jones* despite the tenant's claim the landlord did not have title because "[t]he relation of landlord and tenant was . . . established" and "the tenant is not allowed to dispute the landlord's title").

In the 1878 case, a trial justice[4] named Fickling issued a summons to a tenant "requiring her to show cause before him . . . why she should not be ejected from the premises now occupied by her." 10 S.C. at 301. The tenant appeared and argued the landlord did not have title to the land and she herself was the owner. *Id.* Before the trial justice had a chance to rule in the eviction proceeding, however, the tenant filed a petition with the circuit court for a writ of prohibition, seeking to stop the eviction proceeding because the trial justice "was without jurisdiction" to hear questions of title. 10 S.C. 301-02. The circuit court denied the writ of prohibition. 10 S.C. at 302.

On appeal to this Court, the tenant specifically relied on "subdivision 2 of Section 81," which is now subsection 22-3-20(2). 10 S.C. at 303; *see supra* note 3. We determined the trial justice had the authority to hear the case because an eviction proceeding was not a "civil action" as that term was understood in 1870, and thus the 1870 General Assembly did not intend by enacting what is now subsection 22-3-20(2) to preclude magistrates courts from conducting eviction proceedings, even when the tenant challenges the landlord's title to the property. *Id.* We stated, "The Section in question was enacted . . . at a time when [eviction proceedings] could not in any sense be regarded as an action . . . ." *Id.* "It follows," we held, that the predecessor to subsection 22-3-20(2) "that excludes Trial Justices from the cognizance of 'civil actions' where the title to land is in question, is inapplicable to the case." *Id.*; *see also Swygert v. Goodwin*, 32 S.C. 146, 149, 10 S.E. 933, 934

---

[4] Before the adoption of the 1895 South Carolina Constitution, magistrate judges were also known as "trial justices." *See In re Hooper*, 48 S.C. 149, 152, 26 S.E. 466, 468 (1897) ("One of the objects of section 20 [of article 5 of the 1895 constitution] was to change the name of trial justice to that of magistrate.").

(1890) ("[I]t has been settled in other cases that raising the question of title does not oust the jurisdiction of the trial justice." (citing *Fickling*, 10 S.C. at 303) (other citations omitted)).

Forty-six years later in 1924, the Court was presented with a very similar factual scenario and essentially the same legal question, but this time under the apparent limitation of an 1895 constitutional provision that rendered the literal application of *Fickling* questionable. The Stewart-Jones Company sued D.B. Hankins in 1922 and attached Hankins' property in Rock Hill. *Stewart-Jones*, 127 S.C. at 453, 121 S.E. at 375. After winning a default judgment against Hankins, the Stewart-Jones Company purchased the property at a sheriff's sale and received a deed to the property. *Id.* The company then "instituted [a] proceeding in a Magistrate's Court" to evict Shehan, who was living on the property. *Id.* Shehan opposed the eviction, arguing he was a tenant of Hankins, not the Stewart-Jones Company. *Id.* Shehan denied the Stewart-Jones Company ever owned or possessed the property or that any landlord-tenant relationship existed between them. *Id.* "On appeal from the magistrate's judgment the Circuit Judge held . . . that the title to real property was in question . . . and hence that the magistrate was without jurisdiction." *Id.*

On appeal to this Court, once again, the question was whether the magistrates court had the authority to hear the eviction proceeding. 127 S.C. at 454, 121 S.E. at 375. The *Fickling* declaration of legislative intent remained valid, but the *Stewart-Jones* Court determined that a provision in the South Carolina Constitution of 1895 made it impossible to apply the statute according to *Fickling*. 127 S.C. at 455, 121 S.E. at 376. Article 5, section 21 of the 1895 constitution provided, "Magistrates shall have jurisdiction in such civil cases as the General Assembly may prescribe: Provided, such jurisdiction shall not extend to *cases* . . . where title to real estate is in question . . . ." (emphasis added). While an eviction proceeding was still not a "civil action" under *Fickling*, it was certainly a "case" under the new constitution. Thus, the *Stewart-Jones* Court recognized that the *Fickling* interpretation "would seem to be no longer tenable in view of the provision of the present Constitution (article 5, § 21) that the jurisdiction of magistrates shall not extend 'to cases where the title to real estate is in question.'" 127 S.C. at 455, 121 S.E. at 376. The Court determined, however, the *Fickling* interpretation of the statute could be "substantially adhered to" because, "The rule may be rested and soundly grounded upon the perfectly valid assumption that the issue of title cannot properly arise in [an eviction] proceeding, for the reason that the proceeding contemplated and authorized by the statute is one by a landlord against a tenant who is estopped by that relationship to deny his landlord's title." *Id.*

The Court stated the statute allowing a person to initiate eviction proceedings in magistrates court—then section 5279 of the Code of Laws of S.C. (1922)—"is applicable only to a case where the relationship of landlord and tenant actually exists." 127 S.C. at 456, 121 S.E. at 376. The Court then explained:

> That the existence of the conventional relation of landlord and tenant is a prerequisite to the assumption and exercise of jurisdiction by the magistrate in such proceedings is clearly recognized and assumed in our own decisions.
>
> Necessarily, therefore, it is competent for the magistrate to determine as a fact whether the relation of landlord and tenant exists. Otherwise any tenant, by merely denying the landlord's title or by asserting superior title in himself or in another, could oust the magistrate of jurisdiction and frustrate the plain and salutary object of the statute. On the other hand, it is equally apparent that by merely asserting the claim that another is in possession of real estate as his tenant a party may not be permitted to use the summary statutory proceeding to eject the true owner of the premises or one in possession under the true owner. Hence the question of fact, to be resolved by the magistrate, and to the determination of which he is of necessity limited when the question of title is sought to be raised, is this: Was there a contract between the parties, express or implied, which created the relation of landlord and tenant? Without such contract that relation cannot exist. If it does exist as the result of such contract, then the tenant is estopped to deny the title he has contracted to recognize, and may not inject that issue to deprive the magistrate of jurisdiction in a proceeding under the statute.

127 S.C. at 456-57, 121 S.E. at 376 (citations omitted). Ultimately, the Court in *Stewart-Jones* held the magistrates court "was without jurisdiction" because "[t]he plaintiff neither definitely alleged that the relation of landlord and tenant existed, nor adduced any evidence tending to establish that relationship." 127 S.C. at 457, 121 S.E. at 376.

In *Bamberg Banking* one year later, however, applying the reasoning of *Stewart-Jones*, this Court refused to deprive the magistrates court of the authority to hear an

eviction proceeding simply because the tenant claimed the purported landlord did not have title. 132 S.C. at 132-33, 128 S.E. at 719. Rather, we held, "under the very recent case of *Stewart-Jones*," a magistrate may proceed with an eviction proceeding upon the factual finding that a landlord-tenant relationship exists. *Id.* We stated, "The relation of landlord and tenant was . . . established, and, as the tenant is not allowed to dispute the landlord's title, the issue of title did not and could not arise." 132 S.C. at 133, 128 S.E. at 719.

The constitutional provision discussed in *Stewart-Jones* that the "jurisdiction" of magistrates shall not extend "to cases where the title to real estate is in question" was removed from the South Carolina Constitution in 1973. *See* Act No. 1629, 1972 S.C. Acts 3176 (proposing amendments to the South Carolina Constitution); Act No. 132, 1973 S.C. Acts 161 (ratifying amendments to the South Carolina Constitution); *see also Final Report of the Committee to Make a Study of the South Carolina Constitution of 1895*, at 71 (1969) ("The Committee believes that all inferior courts should be provided for solely by law rather than in the Constitution. This conclusion is justified by the tremendous number of amendments which have been made to the present Constitution on magistrates."). Thus, the original interpretation from *Fickling*—that the 1870 General Assembly did not intend to preclude magistrates courts from presiding over eviction proceedings when the tenant challenged the landlord's title—remains a valid declaration of legislative intent and is once again a "tenable" application of the statute. This is not at all to say that an eviction proceeding is not a "civil action" under modern law; it certainly is. *See* Rule 2, SCRCP ("There shall be one form of action to be known as 'civil action.'"). But the question before us is what the General Assembly intended when it enacted the statute in 1870. *See Kerr v. Richland Mem'l Hosp.*, 383 S.C. 146, 148, 678 S.E.2d 809, 811 (2009) ("The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." (citation omitted)); *Neely v. McFadden*, 2 S.C. 169, 180 (1870) (looking to "the intent of the Legislature that passed the Act" in order to ascertain the meaning of a statute). The *Fickling* Court resolved that question definitively in 1878, finding the 1870 General Assembly did not intend that what is now subsection 22-3-20(2) would preclude magistrates courts from conducting eviction proceedings, even when the tenant challenges the landlord's title to the property.

In addition, the principle announced in *Stewart-Jones* is still valid and perfectly consistent with *Fickling*. The *Stewart-Jones* principle was reaffirmed by this Court as recently as 1982. *See Lund v. Gray Line Water Tours, Inc.*, 277 S.C. 447, 449-50, 289 S.E.2d 404, 406 (1982) ("We have held that a tenant is estopped from attacking the title of a landlord so long as the tenant is in possession of the leased

premises." (citing *Stewart-Jones*, 127 S.C. at 457, 121 S.E. at 376) (other citations omitted)).

Thus, looking back on our decisions over 104 years—from *Fickling* in 1878 through *Stewart-Jones* in 1924 to *Lund* in 1982—it becomes crystal clear that the magistrates court is not deprived of the authority to conduct an eviction proceeding simply because the tenant claims the purported landlord does not hold title to the property. Rather, the magistrates court must first answer the primarily factual question of whether a landlord-tenant agreement exists between the parties. If the magistrates court finds that it does, then the magistrate may proceed to determine whether the tenant breached the agreement and, if so, whether eviction is warranted.[5]

---

[5] In prior opinions in which this Court has addressed whether a magistrates court has the authority to conduct an eviction proceeding when the tenant challenges the purported landlord's title, we discussed the issue as one of "subject matter jurisdiction." The parties to this case and the court of appeals, likewise, discuss the issue as one of "jurisdiction." *See Rivers*, 440 S.C. at 188, 889 S.E.2d at 257 ("Precedent explains the magistrate retains jurisdiction if the defendant does not comply with the statutory procedure for raising a question as to title or offer any evidence drawing title into question."). Recently, however, the Court has corrected old case law which imprecisely described certain procedural and substantive rules as questions of "subject matter jurisdiction." *See Rish v. Rish*, 443 S.C. 220, 225, 904 S.E.2d 862, 864-65 (2024) (clarifying a statute deals with whether the family court has the "authority" to modify alimony rather than the "subject matter jurisdiction" to do so); *Allen v. S.C. Dep't of Corr.*, 439 S.C. 164, 167, 169, 886 S.E.2d 671, 672, 673 (2023) ("[W]e take this opportunity to address the confusion that has arisen in past jurisprudence" regarding "subject matter jurisdiction," and "The analysis of the issue in [an older case] as one of 'subject matter jurisdiction,' which has been repeated in several cases, was mistaken"); *State v. Campbell*, 376 S.C. 212, 216, 656 S.E.2d 371, 373 (2008) (clarifying that while a circuit court lacks the "power" to re-sentence a defendant after the term of court has ended, it is not for lack of "subject matter jurisdiction"); *State v. Gentry*, 363 S.C. 93, 101-03, 610 S.E.2d 494, 499-500 (2005) (holding a defective indictment does not deprive the circuit court of subject matter jurisdiction).

We acknowledge section 22-3-20 is entitled "Civil actions when magistrate has no jurisdiction." However, this statute was written 155 years ago when "jurisdiction" had a different meaning. Currently, "[i]n South Carolina, 'subject matter jurisdiction' refers to the court's 'power to hear and determine cases of the general class to which the proceedings in question belong.'" *Williams v. Jeffcoat*, 444 S.C. 224, 239, 906

Applying this longstanding rule to this case, the dispositive question is whether Smith and the Rivers had a landlord-tenant relationship. The Magistrate's Return provides, "It was . . . the opinion of the court that Magistrate's Court had maintained proper jurisdiction over landlord-tenant matters where in this case, there was no question of title regarding the owner's identity . . . ." From that ruling, the existence of a landlord-tenant relationship necessarily follows. On appeal, the circuit court interpreted the magistrates court's ruling accordingly, stating, "Smith permitted the Rivers to occupy the Property without a written lease, to the exclusion of others, without a definite term. Thus, the Rivers are the tenants of Smith. The Magistrate's Court properly determined there was a landlord-tenant relationship between the parties." Then, the court of appeals found "the magistrate orally ruled that James was the current and lawful owner of the property, [and] that the Rivers were tenants." 440 S.C. at 186, 889 S.E.2d at 256.

We agree with the court of appeals that the record supports the magistrates court's finding "that the Rivers were tenants" of Smith. We also agree with the circuit court's finding, "The Magistrate's Court properly determined there was a landlord-tenant relationship between the parties." The evidence supporting these rulings includes Rufus Rivers' testimony they entered into an oral agreement with Jessie Mae in 2009 to allow them to live on the property. Jessie Mae's promise to allow the Rivers to live on her property was sufficient to constitute a rental agreement for a month to month tenancy, immaterial of the fact the agreement was not in writing and the Rivers did not pay rent. *See* S.C. Code Ann. § 27-35-10 (2007) ("A tenancy for not to exceed one year may be created by oral agreement."); S.C. Code Ann. § 27-40-310(d) (2007) ("Unless the rental agreement fixes a definite term, the tenancy is . . . month to month."); *see also Bruce v. Durney*, 341 S.C. 563, 568-69, 534 S.E.2d 720, 723 (Ct. App. 2000) ("The payment of rent is not required by the [Residential Landlord and Tenant Act] to constitute a valid landlord/tenant relationship.").

When Smith took title to the property in 2014, he became the landlord under the oral agreement. *See* S.C. Code Ann. § 27-35-50 (2007) ("When real estate is sold while

---

S.E.2d 588, 596 (2024) (quoting *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237-38, 442 S.E.2d 598, 600 (1994)). There is no question magistrates courts have subject matter jurisdiction over eviction actions. *See* S.C. Code Ann. § 22-3-10(10) (2025); S.C. Code Ann. § 27-37-20 (2007). Thus, this case is about whether the magistrates court has the "authority" to evict a tenant when he challenges his landlord's title; it is not about "jurisdiction."

under lease, the relationship of landlord and tenant is created ipso facto as between the purchaser and the tenant as if the purchaser had been the landlord in the first instance and the purchaser shall be entitled to all the benefits and rights under such lease as if he had been the lessor from the date of the purchase."). The Rivers continued to live on the property for five years after Smith obtained title—and two years after Jessie Mae died—without challenging Smith's ownership of the property. Thus, the record clearly supports the magistrates court's and the circuit court's factual determination that a landlord-tenant relationship existed between Smith and the Rivers, and the magistrates court had the authority to hear the eviction proceeding.[6]

We stated earlier that our holdings in *Fickling* and *Stewart-Jones* are "complementary." Reading those two decisions together now, it was never the intent of the General Assembly to deprive magistrates courts of the authority to hear eviction actions simply because the tenant claims the landlord does not have title. *Fickling*, 10 S.C. at 303. Rather, if the magistrates court finds the existence of a landlord-tenant agreement, the tenant may not challenge the title he previously "contracted to recognize." *Stewart-Jones*, 127 S.C. at 457, 121 S.E. at 376. Thus, under *Fickling* and *Stewart-Jones*, the initial matter to be litigated in any eviction action is whether the purported tenant entered a landlord-tenant agreement with the landlord. *See Stewart-Jones*, 127 S.C. at 457, 121 S.E. at 376 (holding "the question . . . to be resolved by the magistrate, and to the determination of which he is of necessity limited when the question of title is sought to be raised, is this: Was there a contract between the parties, express or implied, which created the relation of landlord and tenant?"). In the vast majority of modern cases, this question will be

---

[6] We decline to address the court of appeals' conclusion that the Rivers complied with the statutory procedure for challenging title found in sections 22-3-1110 to -1180 of the South Carolina Code (2025). *Rivers*, 440 S.C. at 189, 889 S.E.2d at 257. We cannot envision that it will ever be necessary in an eviction action to consider whether the tenant complied with these provisions. If the magistrates court finds a landlord-tenant relationship exists, the tenant is precluded from challenging title and the magistrates court has the authority to hear the eviction action. *Stewart-Jones*, 127 S.C. at 457, 121 S.E. at 376. If the magistrates court finds no landlord-tenant relationship exists, the magistrates court must necessarily deny eviction and the case is over. Thus, while the defendant's compliance with the statutory procedure for challenging title is important in other types of actions before the magistrates court in which title comes into question, it was not necessary for the court of appeals to consider the tenant's compliance with the rules in an eviction proceeding.

resolved by reference to a written landlord-tenant agreement.[7]  In those rare cases in which the alleged landlord-tenant agreement is not written, the magistrates court should determine in the first place—precisely as Judge McKune-Grant did in this case—whether the purported landlord has demonstrated that the tenant has been paying rent, or that the public record of the county indicates he has title to the property.  The purported landlord's presentation of evidence demonstrating either of those facts will ordinarily suffice to satisfy the landlord's burden.  If the magistrates court determines for whatever reason there is no landlord-tenant agreement, that ends the case, and the identity of the true title holder must be litigated in another forum.  If, on the other hand, the magistrates court determines there is a landlord-tenant agreement, the court should proceed to determine whether the tenant breached the agreement in a manner that warrants eviction.

## III.    Conclusion

We hold the magistrates court had the authority to evict the Rivers from their home because the court made the factual determination that a landlord-tenant relationship existed between them and Smith.  We reverse the court of appeals and reinstate the magistrates court's eviction order.

**REVERSED.**

**KITTREDGE, C.J., JAMES, HILL and VERDIN, JJ., concur.**

---

[7] It may actually be uncommon in today's residential and commercial real property leasing market that the landlord holds title to the leased property.  The more common situation is that a property management company—operating under an agency contract with the owner—is the landlord.  The Residential Landlord and Tenant Act specifically contemplates this.  *See* S.C. Code Ann. § 27-40-210(6) (2007) ("'landlord' means the owner, lessor, or sublessor of the premises, and it also means a manager of the premises who fails to disclose as required by § 27-40-420[.]"); S.C. Code Ann. § 27-40-420(a) (2007) ("A landlord or any person authorized to enter into a rental agreement on his behalf shall disclose to the tenant . . . the name and address of an owner of the premises or a person authorized to act on behalf of the owner as agent . . . .").